KROGER TEXAS LIMITED PARTNERSHIP and Robert Moody, Petitioners,

v.

Theresa SUBERU, Respondent.

No. 03–0913.

Supreme Court of Texas.

Argued Nov. 9, 2004.

Decided May 5, 2006.

Rehearing Denied Sept. 22, 2006.

Donna C. Peavler, Uloth & Peavler, LLP, Dallas, Amber L. Slayton, Frisco, for Petitioners.

Thomas J. Stutz, Thomas J. Stutz, P.C., Thomas B. Cowart, Law Office of Windle Turley, P.C., Dallas, for Respondent.

P. Michael Jung, Strasburger & Price, L.L.P., Dallas, for Amicus Curiae Arkoma Basin Exploration Company.

Chief Justice JEFFERSON delivered the opinion of the Court, in which Justice HECHT, Justice O'NEILL, Justice WAINWRIGHT, Justice BRISTER, Justice GREEN, and Justice WILLETT joined.

Theresa Suberu sued Kroger Texas Limited Partnership and assistant store manager Robert Moody (collectively, Kroger) for malicious prosecution and intentional infliction of emotional distress after she was acquitted on misdemeanor theft charges arising from an alleged shoplifting incident. The jury returned a verdict in Suberu's favor on both claims, and the trial court signed a judgment in conformity with the verdict. The court of appeals affirmed. Kroger argues that the evidence is legally insufficient to support liability under each claim, and we agree. Accordingly, we reverse the court of appeals' judgment and render judgment for Kroger.

## I

### Background

On the evening of March 1, 1999, Theresa Suberu went to a Kroger grocery store in Garland to purchase medication. Karrah Parkey, Kroger's pharmacy technician, recognized Suberu as a prior customer, assumed she had come to pick up medicine for her husband, Michael, and placed his medicine on the counter. Suberu uses cash for all transactions and did not have enough in her purse to pay for both her medicine and Michael's. Therefore, she told Parkey she would retrieve money from her vehicle and would return momentarily.

Suberu was leaving the store when Kellie Wier, the front-end manager, yelled "Stop!" According to Wier, Suberu was pushing a grocery cart full of unsacked goods. Suberu, however, testified that she has never used a cart to shop for groceries and did not have one that evening. Wier reached Suberu in the foyer, where the two had a brief quarrel. Suberu testified that Wier said, "Those two people who just left, you are with them," and "You are going to jail for a long time." Wier, however, denied making those statements. She claims Suberu became hostile when Wier asked to see a receipt, and that Suberu kept shouting, "You're crazy!" Suberu testified that she was annoyed because Wier would not listen to her explanation for leaving the store.

Major Belton, another Kroger employee, was bagging groceries when Wier yelled for Suberu to stop. Belton testified that he looked up and saw Suberu pushing a cart. He watched as Wier questioned Suberu in the foyer, and, when Wier called him over to take the cart, he noticed that it contained mostly unsacked groceries. Robert Moody, the assistant manager, arrived and discussed the occurrence with Suberu and Wier. Moody asked Suberu if she had a receipt, and she replied "No." Belton then wheeled the cart to register three, where Matt Helwig was working as a checker. Helwig testified that he, too, saw Suberu pushing the cart out of the store. Moody and Wier escorted Suberu to an office, where Moody directed Wier to call the police.

Police officers arrived ten minutes after receiving Wier's call. Moody explained the events and filled out a shoplifting incident report. Meanwhile, Wier took the cart from Helwig's register and scanned

the unsacked groceries. Moody stapled to his report a printed list of the scanned items, which totaled $261. While sitting in the office, Suberu explained that she had been at the pharmacy and was going outside to get cash from her vehicle. Despite these pleas, neither the officers nor any Kroger employee checked with the pharmacy.[1] The officers arrested Suberu and walked her out in handcuffs.

Suberu testified that she felt humiliated and has been traumatized as a result of the ordeal. Her husband, Michael, said she was "in a state of shock" when he picked her up at the jail four hours after her arrest. Suberu could not sleep that night, and was unable to cook, do laundry, and shop for groceries for several months. At trial, Michael said he and Suberu were "still working through it."

After a jury acquitted her on misdemeanor theft charges, Suberu filed the present suit, alleging malicious prosecution and intentional infliction of emotional distress. The trial court rendered judgment on the jury's verdict, which found in Suberu's favor on both claims and awarded $500 in actual damages for expenses in defending the prosecution, $28,000 for past and future mental anguish, and $50,500 in exemplary damages based on the malicious prosecution claim. The jury awarded no exemplary damages for intentional infliction of emotional distress. The court of appeals affirmed. 113 S.W.3d 588. We granted Kroger's petition for review. 47 Tex. Sup.Ct. J. 1197 (Sept. 13, 2004).

## II

## Malicious Prosecution

This Court has long recognized a cause of action for those subjected unjustifiably to criminal proceedings, but has also made clear that the cause of action must sometimes yield to society's greater interest in encouraging citizens to report crimes, real or perceived.[2] The elements necessary to prevail on a malicious prosecution claim reflect this balance.[3] Thus, the plaintiff must prove not only that the defendant commenced criminal proceedings against her and she is innocent of the crime charged, but also that the defendant lacked probable cause and harbored malice toward her. These latter elements guard against a jury's natural inclination to punish those who, through error but not malevolence, commence criminal proceedings against a person who is ultimately exonerated.[4] The probable cause element "asks

---

1. Karrah Parkey testified that, although she does not remember seeing a cart, she heard Suberu "maneuver" a cart over a bump that joins carpet around the pharmacy with Kroger's tile floor. Suberu's cross examination revealed inconsistencies in Parkey's testimony but, as explained below, Parkey's testimony is immaterial to our disposition.

2. See, e.g., Sebastian v. Cheney, 86 Tex. 497, 25 S.W. 691, 694 (1894) ("It is important that every citizen should be protected against malicious prosecutions, and it is equally important that crimes should be punished, in order that the law-abiding citizen may be secure in life, liberty, and property. To make the citizen liable to be mulcted in damages for an honest discharge of duty is to give immunity to crime, and to weaken the restraining pow-

er of the criminal law, thereby endangering the security of law-abiding people.").

3. In its entirety, the claim for malicious criminal prosecution required Suberu to prove by a preponderance of the evidence that: (1) a criminal prosecution was commenced against her; (2) Kroger initiated or procured that prosecution; (3) the prosecution terminated in her favor; (4) she was innocent of the charges; (5) Kroger lacked probable cause to initiate the prosecution; (6) Kroger acted with malice; and (7) she suffered damages. Richey v. Brookshire Grocery Co., 952 S.W.2d 515, 517 (Tex.1997).

4. See RESTATEMENT (SECOND) OF TORTS ch. 29, intro. cmt. (1977) (discussing competing social interests and stating that "private persons

whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were instituted." *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex.1997) (citing *Akin v. Dahl*, 661 S.W.2d 917, 920 (Tex.1983), *cert. denied*, 466 U.S. 938, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984)). Courts must presume that the defendant acted reasonably and had probable cause to initiate criminal proceedings. *Id.* To rebut this presumption, the plaintiff must produce evidence that the motives, grounds, beliefs, or other information upon which the defendant acted did not constitute probable cause. *Id.* at 518.

In the court of appeals, Kroger challenged the legal sufficiency of the evidence to support the second, fourth, fifth, and sixth elements of Suberu's claim,[5] and her award for mental anguish and exemplary damages. 113 S.W.3d 588, 596–601. The court resolved all issues against Kroger. *Id.* at 605. In upholding the jury's finding on probable cause, the court cited Suberu's testimony that she was in the store for a few minutes to obtain a prescription, left to get money from her car, and never had a cart. *Id.* at 598. The court reasoned that it was the province of the jury to assess credibility, and the jury apparently found that Wier never saw Suberu with a cart. *Id.* at 598–99. For the reasons considered below, the evidence favorable to Suberu is legally insufficient to rebut the presumption that Kroger acted reasonably and with probable cause. As this conclusion is dispositive, we do not reach Kroger's remaining challenges to malicious prosecution liability and exemplary damages.

who aid in the enforcement of the law should be given an effective protection against the prejudice that is likely to arise from the termination of the prosecution in favor of the accused.").

## A

## Standard of Review

 In reviewing a verdict for legal sufficiency, we credit evidence that supports the verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A challenge to the legal sufficiency of evidence will be sustained when, among other things, the evidence offered to establish a vital fact does not exceed a scintilla. *Id.* at 810 (citing Robert W. Calvert, *"No Evidence" & "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)). Evidence does not exceed a scintilla if it is " 'so weak as to do no more than create a mere surmise or suspicion' " that the fact exists. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983)).

## B

## Application

Suberu points to the following evidence as supporting a finding that Kroger lacked probable cause:

1. Kroger's failure to check Suberu's explanation with the pharmacy technician before initiating criminal proceedings;

2. Inconsistencies in Karrah Parkey's testimony regarding whether she saw Suberu with a cart; and

3. Suberu's testimony that she did not have a cart.

5. *See supra* note 3.

■ Starting with the first item, it is well settled that a private citizen has no duty to investigate a suspect's alibi or explanation before reporting a crime. *Richey*, 952 S.W.2d at 518 (citing *Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 627 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.)). If the acts or omissions necessary to constitute a crime reasonably appear to have been completed, a complainant's failure to investigate does not negate probable cause. *Id.* Thus, the fact that no one investigated Suberu's explanation is not evidence that probable cause was lacking.

■ The second item is irrelevant to whether Kroger had probable cause, because none of the Kroger employees spoke to Karrah Parkey before Moody initiated criminal proceedings. Parkey's credibility does not affect whether Kroger, at the time it called the police, reasonably believed Suberu was guilty of shoplifting. Accordingly, this evidence must be disregarded.

■ Suberu relies primarily on the third item—her testimony that she did not have a cart. In contrast to the criminal case, however, here the question is not whether Suberu had a cart, but whether Kroger reasonably believed she did. *See Richey*, 952 S.W.2d at 517; *Akin*, 661 S.W.2d at 920–21. Wier, Belton, and Helwig each testified that they observed Suberu leaving the store with a cart containing items she had not purchased. The law presumes that Kroger honestly and reasonably acted on the basis of these observations in reporting Suberu to police. *See Richey*, 952 S.W.2d at 517; *see also City of Keller*, 168 S.W.3d at 817 (discussing legal sufficiency where the fact finding examined concerns what a party knew or why it took a certain course). Kroger contends that Suberu's evidence is legally insuffi-

cient to rebut this presumption. We agree.

To rebut the probable cause presumption, Suberu had to produce evidence that the motives, grounds, beliefs, or other information upon which Kroger acted demonstrate that it did not reasonably believe Suberu was guilty of shoplifting. *See Richey*, 952 S.W.2d at 518; *Akin*, 661 S.W.2d at 920. While Suberu's evidence supports the jury's determination—consistent with her acquittal—that she did not steal groceries, it does not establish the absence of probable cause.

■ The criminal law presumes Suberu's innocence and presents the State with a heavy burden of proof for a conviction, because it is more important that the guilty occasionally go free than for the innocent to be jailed. *In re Winship*, 397 U.S. 358, 372, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring). The civil law presumes Kroger's good faith and requires Suberu to rebut this presumption, because it is more important that a private citizen report an apparent subversion of our laws than for the wrongly accused to attain monetary redress from the accuser.[6] These presumptions provide benchmarks with which to evaluate this case.

■ Suberu's acquittal does not prove that Kroger lacked probable cause, just as her arrest does not prove her guilt. Her acquittal is not evidence, then, that she was unjustifiably subjected to criminal proceedings; it shows only that the government did not prove her guilt beyond a reasonable doubt. *United States v. Watts*, 519 U.S. 148, 155, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). Because probable cause is presumed, Suberu was required to produce evidence that Kroger initiated her prosecution on the basis of information or

6. *See supra* notes 2, 4.

motives that do not support a reasonable belief that she was guilty of shoplifting. *See Richey*, 952 S.W.2d at 518; *Akin*, 661 S.W.2d at 920. If there was no such evidence, Kroger is entitled to judgment as a matter of law.

Suberu was Kroger's regular customer, yet she introduced no evidence of, for example, prior bad relations, preexisting debt, racial animus, or any private motivation to harm her. There is no evidence that, on the night in question, Wier, Belton, and Helwig caucused prior to Suberu's detention; nor is there evidence that there was time for them to confer before recounting their similar observations to Moody. Further, there is no evidence that Kroger withheld exculpatory information from the police or capriciously enforced its shoplifting policy against customers. Although the critical question in this case was Kroger's state of mind, Suberu produced no evidence that Kroger initiated her prosecution on the basis of something other than a reasonable belief that she was guilty. *See City of Keller*, 168 S.W.3d at 829–30.

 Suberu's testimony does no more than create a surmise or suspicion that Kroger did not believe she was guilty of shoplifting, because it merely invites speculation that Kroger framed her and lied to the police. This conclusion, however, is no more probable than the proposition that Kroger's employees, each independent of the others, mistakenly believed they observed the commission of a crime. We have cautioned that, "[e]vidence that is so slight as to make any inference a guess is in legal effect no evidence." *Ridgway*, 135 S.W.3d at 601 (citing *Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex.2001)). Unless there is evidence rebutting the presumption of probable cause, a prosecution resulting from eyewitness identifications that turn out to be incorrect or, at least, insufficient to warrant a conviction, does not satisfy the exacting requirements for a plaintiff to prevail in a malicious prosecution case.[7]

In sum, the jury could reasonably conclude, based on her acquittal and her testimony, that Suberu did not, in fact, steal groceries. Without more, however, Suberu's innocence is insufficient to support a finding that Kroger lacked probable cause. Courts must be especially careful in malicious prosecution cases to ensure that sufficient evidence supports each element of liability. Otherwise, the fourth element (innocence) automatically swallows the fifth (lack of probable cause) and sixth (malice) elements of this claim.

## III

## Intentional Infliction of Emotional Distress

 Kroger also challenges the legal sufficiency of the evidence to support its liability for intentional infliction of emo-

---

7. *See, e.g., Burrows v. Neiman–Marcus Group, Inc.*, 976 S.W.2d 784, 788 (Tex.App.—Houston [1st Dist.] 1998, no pet.) (no evidence that the defendant lacked probable cause where two employees accused the plaintiff of using a customer's lost credit card to make purchases at nearby stores); *Diamond Shamrock Corp. v. Ortiz*, 753 S.W.2d 238, 242 (Tex.App.—Corpus Christi 1988, writ denied) (no evidence that the defendant lacked probable cause where its employees gave written statements alleging the plaintiff was stealing merchandise); *Stringer v. Cross*, 564 S.W.2d 121, 122 (Tex. Civ.App.—Beaumont 1978, no writ) (no evidence of malice where a man injured in a riot identified the plaintiff as a participant); *Deaton v. Montgomery Ward & Co.*, 159 S.W.2d 969, 972 (Tex.Civ.App.—Beaumont 1942, writ ref'd w.o.m.) (probable cause was established as a matter of law where the defendant's employees identified the plaintiff as the person who cashed a forged check).

tional distress.[8] To prevail on this claim, Suberu had to prove by a preponderance of the evidence that: (1) Kroger acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused her emotional distress; and (4) the emotional distress was severe. *Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex.2004); *Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex.2003). A defendant's conduct satisfies the second element only if it is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Conduct that is merely insensitive or rude is not extreme and outrageous, nor are "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex.1999).

■■■ Meritorious claims for intentional infliction of emotional distress are relatively rare precisely because most human conduct, even that which causes injury to others, cannot be fairly characterized as extreme and outrageous. *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 815 n. 1 (Tex.2005) (citing cases in which conduct was not extreme and outrageous). But despite the danger of fictitious claims, the difficulty of measuring damages, and the indeterminacy of its proscriptions, intentional infliction of emotional distress can be an effective "cause of action for egregious conduct that might otherwise go unremedied." *Hoffmann–La Roche*, 144

S.W.3d at 447 (quoting *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex.1998)); *see, e.g., Morgan v. Anthony*, 27 S.W.3d 928, 930 (Tex.2000) (man who stopped to assist motorist having car trouble on a rural highway repeatedly blocked her escape and harassed her); *GTE Sw.*, 998 S.W.2d at 613–14 (supervisor physically and verbally threatened employees over a two-year period). Applying the standard of review outlined in Part II A, we turn to the evidence in this case.

■■■ Kroger contends that the evidence is legally insufficient to support a finding that its conduct was extreme and outrageous. Suberu, however, argues that knowingly providing false information to police so that an innocent person is prosecuted for shoplifting is extreme and outrageous. While we are inclined to agree that Suberu's premise is sound, her argument is hypothetical in light of the record before us. The only evidence that conceivably suggests Kroger and its employees knew Suberu was innocent is her testimony that she did not have a cart. In the preceding analysis, however, we concluded that her claimed innocence, by itself, is insufficient to find that Kroger did not honestly and reasonably believe Suberu was guilty. Further, Suberu produced no evidence of prior bad relations, racial animus, or other ulterior motives, nor does she allege that Kroger subjected her to outrageous or abusive treatment while she was detained on its premises. We do not doubt that the incident caused Suberu embarrassment and emotional distress, but there is no evidence that Kroger intentionally subjected her to such distress knowing she was

---

8. The parties briefed this issue in the court of appeals, but the court did not address it. 113 S.W.3d at 600; Tex. R. App. P. 47.1. Because Kroger raised the issue to this Court in a supplemental brief, we have authority to con-

sider it. Tex. R. App. P. 53.4; *Little v. Texas Dep't of Criminal Justice*, 148 S.W.3d 374, 384 (Tex.2004); *N. Nat. Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 609 (Tex.1998).

innocent. Consequently, Suberu's testimony does not exceed a scintilla of evidence and is legally insufficient to support a finding that Kroger's conduct was extreme and outrageous.

## IV

### Conclusion

The evidence is legally insufficient to support a finding that Kroger lacked probable cause to initiate criminal proceedings against Suberu for shoplifting, and legally insufficient to support a finding that Kroger's conduct was extreme and outrageous. Accordingly, we reverse the court of appeals' judgment and render judgment that Suberu take nothing. *See* TEX. R. APP. P. 60.2(c).

Justice JOHNSON filed a dissenting opinion, in which Justice MEDINA joined.

Justice JOHNSON, joined by Justice MEDINA and by Justice WAINWRIGHT as to Part III, concurring in part and dissenting in part.

In connection with the first jury question, which submitted Theresa Suberu's malicious prosecution claim, the jury was instructed, without objection, that:

> "Malice" means ill will, bad or evil motive, or such gross indifference to the rights of others as to amount to a willful or wanton act.
> "Probable cause" means the existence of such facts and circumstances as would excite belief in a person of reasonable mind, acting on the facts or circumstances within his knowledge at the time the prosecution was commenced, that the other person was guilty of a criminal offense. The probable cause determination asks whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and reasonably be-

lieved them to be before the criminal proceedings were instituted.

*See Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex.1997); COMM. on PATTERN JURY CHARGES, STATE BAR of TEX., TEXAS PATTERN JURY CHARGES—GENERAL NEGLIGENCE & INTENTIONAL PERSONAL TORTS PJC 6.4 (2000). We must evaluate the evidence according to the charge given and the contentions of the parties. *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 618–19 (Tex.2004) ("In assessing the evidence, we assume that the portions of the charge just quoted, because they were given without objection, correctly state the law.").

## I

The instruction as to probable cause tasked the jury, in part, to resolve conflicting testimony as to whether Suberu was exiting the Kroger store with a basket of groceries when she was stopped and detained by Kroger employees. As the court of appeals' opinion and the Court's opinion set out in detail, she testified, unequivocally, "No"; Kroger's employees testified, unequivocally, "Yes." Under the first sentence of the probable cause instruction (that part of the instruction defining probable cause), the jury had to resolve the clearly conflicting testimony to find what facts and circumstances existed, and then to find if those facts and circumstances were such that they would excite belief in a person of "reasonable mind" that Suberu was guilty of a criminal offense. The second sentence of the instruction authorized the jury to find that probable cause existed if a reasonable person would believe Suberu committed a crime given the facts as Kroger *both* honestly *and* reasonably believed them to be.

The Court focuses on Suberu's failure to prove that Kroger did not honestly believe that Suberu was leaving the store with a cart full of groceries for which she had not

paid. Even assuming a lack of evidence that Kroger did not subjectively honestly believe that Suberu was leaving with a basket of groceries and that Kroger's witnesses did not subjectively honestly believe Suberu was leaving with a basket of groceries, an honest belief was not enough. Under the charge, the jury's finding that Kroger did not have probable cause could have been, and we must presume that it was, based on a finding that an honest belief was not reasonable because the credibility conflict was resolved in favor of Suberu: she was not leaving with a basket regardless of Kroger's witnesses' honest belief that she was.

Suberu's testimony contained inconsistencies. Nevertheless, her testimony that she did not have a cart and that there was no cart next to her at the time Kellie Wier stopped her was some evidence supporting the jury's finding that Kroger's belief in a contrary set of facts was not reasonable regardless of Kroger's subjective sincerity in holding that belief. I would hold that the evidence was legally sufficient to support the jury's finding that Kroger lacked probable cause. I dissent from the Court's holding that it was not.

## II

As to petitioner Robert Moody, individually, however, I agree that the evidence was legally insufficient to support the jury's finding that he lacked probable cause; that is, that facts and circumstances within his knowledge were not such as would have excited belief in a person of reasonable mind that Suberu was guilty of a criminal offense. The jury charge required separate findings as to whether Kroger maliciously prosecuted Suberu and as to whether Moody maliciously prosecuted her. Suberu alleged that Kroger was liable by and through its employees, but she did not allege that Moody was liable based on the actions or knowledge of anyone other than himself.

Moody was not present when Suberu was exiting the store and thus had to make a decision based on conflicting factual reports from Suberu and Kroger employee witnesses. There is no evidence that Moody, as assistant manager, did not have an honest, reasonable belief that Suberu was exiting the store with a basket of unpaid groceries and was probably committing a crime. I concur in the Court's opinion and judgment as to Moody.

## III

Finally, I note that Kroger does not challenge the evidentiary sufficiency of the jury findings as to malice, except in relation to exemplary damages. Kroger's failure to challenge the evidentiary support as to malice is understandable in light of our decisions holding that malice may be inferred merely from a lack of probable cause. *See, e.g., Shannon v. Jones,* 76 Tex. 141, 13 S.W. 477, 479 (1890); *Gulf, Colo. & Santa Fe Ry. Co. v. James,* 73 Tex. 12, 10 S.W. 744, 747 (1889); *Biering v. First Nat'l Bank of Galveston,* 69 Tex. 599, 7 S.W. 90, 92 (1888). Evidence of a defendant's subjective motives, state of mind, and good faith and honesty of belief in initiating or commencing a prosecution is relevant to the malice element of the cause of action. A re-examination of our holdings that lack of probable cause will support an inference of malice without further examination of the evidence may well be in order.