Nicholas **SUMMERVILLE**, Appellant,

v.

**ALLIED BARTON SECURITY SERVICES, individually and d/b/a Allied Security and Tom Smith, Appellees.**

No. 01–06–00757–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 1, 2007.

Mark W. Long, Doherty, Long, Wagner, Austin, Tom Rowatt, Houston, for appellant.

Audrey Mullert Vicknair, The Law Office of Audrey Mullert Vicknair, Corpus Christi, Blaine Hummel, Ireson & Wetzel, P.C., Houston, for appellees.

Panel consists of Justices TAFT, HANKS, and HIGLEY.

## OPINION

GEORGE C. HANKS, JR., Justice.

After he was arrested for criminal trespass, appellant, Nicholas Summerville, sued appellees, Allied Barton Security Services, individually and d/b/a Allied Security, and Tom Smith, for malicious prosecution. The trial court granted summary judgment for appellees, and, in two issues on appeal, Summerville contends that the summary judgment was improper because (1) appellees initiated his prosecution on the basis of something other than a reasonable belief that he was guilty and (2) Smith admitted that he did not have any knowledge or evidence that Summerville was guilty of criminal trespass at the time that the prosecution was initiated. We affirm.

## Background[1]

There had been several jewelry store robberies in some area shopping malls. According to witnesses, they all occurred the same way: an African–American male would ask to see an expensive ring, and, once the salesperson gave him the ring, he would then run from the store with the ring.

On January 21, 2005, Luis Aguilar, an employee at the Helzberg Diamonds in Baybrook Mall, assisted the appellant who had asked to see rings in the $1000 range. Aguilar said appellant, an African–American male wearing a ripped jacket, appeared nervous with sweat on his forehead, and he had an unknown white substance on his hand. Appellant also appeared reluctant to touch anything while in the store. After appellant asked to see the most expensive diamond in the store, Aguilar asked a co-worker to notify mall security.

Mary Ann Flores, who also worked at Helzberg Diamonds, had seen appellant enter the store the previous week and ask to use the telephone behind the sales counter. At that time, Flores responded that customers were not allowed behind the counter, but told appellant that he could use the phone on the sales floor. Flores said appellant got very angry and accused her of discriminating against him because he was black. Flores also explained that she had been asked to help with appellant that day because he had asked to see the most expensive diamond in the store. She asked if he had an account; he said he did, but he refused to show any identification despite being asked for it three times. Finally, appellant asked her to leave so that he could concentrate on one salesperson. Flores also noticed the white substance on appellant's hand, which he at-

---

1. The "facts" are elicited from witness statements in the original mall offense report and from deposition testimony attached to the motions for summary judgment.

tributed to chemicals that he had handled in the lab at NASA, his alleged employer.

Tom Smith, the director of security at the Baybrook Mall, noticed appellant acting suspiciously while shopping in Helzberg Diamonds. Lauren Barkdull, a security officer on duty at Baybrook Mall, headed toward the mall security office, which is located in a restricted access hallway behind the stores. She saw appellant walk past the security office door in the restricted hallway, and he walked back and forth a couple times before he came in and asked her if someone had called security on him. She noticed that appellant appeared nervous and was sweating, and she told him that no one had notified them. Appellant walked back down the restricted hallway into the mall.

Officer Thornburg from the Houston Police Department, was working at the mall as a security officer for Dillard's Department Store. Mall security notified him that there was a shopper who matched the description of the "snatch and grab" suspect. Officer Thornburg followed appellant and saw him enter the food court. Security dispatch informed him that appellant had entered an area restricted to employees only. Officer Thornburg stopped appellant as he was leaving the mall. Because he had no backup, Officer Thornburg handcuffed appellant and took him to the security office. He had to maintain a firm grip because appellant repeatedly slowed down and tried to pull away.

Appellant told Officer Thornburg that he worked for NASA and had come to Helzberg Diamonds on his lunch hour to buy his wife a ring. He followed the mall security officer into the hallway to find out if he was being watched. Appellant told Officer Thornburg that he did not see the sign on the door, which noted that there was no public access. Appellant was charged with criminal trespass. During

his deposition in this malicious prosecution case, Officer Thornburg testified that he got a call over the radio that someone was running through the access hallway behind doors bearing signs that read "Authorized Personnel Only." His initial conclusion was that "he was trying to evade us." Thornburg testified that Summerville's "actions leading up to [the arrest] were highly suspicious," and he had probable cause to arrest Summerville for criminal trespass. Thornburg acknowledged that the facts and suspicions that lead him to believe that Summerville was committing a crime came from information given to him by other people.

Summerville stated that, under the direction of Smith, he was handcuffed and forcibly detained by Officer Thornburg for more than four hours in the mall security office before being exonerated as the "snatch and grab" jewelry thief. In his deposition during this malicious prosecution case, Summerville testified that Officer Thornburg drew his gun, put it up to Summerville's head, and said, "Get the fuck up against the God damn wall and you better not fucking move. Get up against the wall you son of a bitch." Summerville believed that Tom Smith had Officer Thornburg detain him so that he could be identified for the jewelry "snatch and grabs." He believed this because Smith yelled, "That's him" when Thornburg detained him. Summerville further testified that, after he was exonerated for the robberies and while he was still being detained:

> Then Tom Smith—and then he told me after the room he said, "You niggers think you always have your run of the mall." And then I told him—I said, "Man this is just straight racism." He said, "yeah, boy, I'm going to show you how much of a bigot I am, nigger." He said, "I can't stand you niggers and

Mexicans." I never had anybody talk to me like that and I'm a senior engineer on a rocket booster propulsion for the space shuttle.

Summerville sued AlliedBarton Security Services, Individually and d/b/a Allied Security, and Tom Smith alleging that he had been racially profiled, verbally abused, and falsely accused of criminal trespass, which caused him great embarrassment, mental anguish, and humiliation. Summerville stated that the "charges were soon thereafter dropped by the Harris County District Attorney for lack of probable cause."

The defendants filed a traditional motion for summary judgment in which they contended there was probable cause for Summerville's arrest because "it is undisputed that [Summerville] entered an area of the mall without effective consent and there were signs posting notice that the entrance was forbidden." [2] Without stating its reasons, the trial court granted the motion and ordered that Summerville take nothing. This appeal followed.

### Standard of Review

A party moving for a traditional summary judgment must conclusively prove all of the elements of its cause of action or defense as a matter of law. TEX.R. CIV. P. 166a(c); *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001); *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex.1999). When, as here, a summary judgment does not specify or state the grounds on which the trial court relied, the non-movant on appeal must negate any grounds on which the trial court could have relied, and we will affirm the summary judgment on appeal if any of the grounds presented in the motion is meritorious. *See Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170,

173 (Tex.1995); *Mellon Serv. Co. v. Touche Ross & Co.*, 17 S.W.3d 432, 435 (Tex.App.-Houston [1st Dist.] 2000, no pet.). A non-movant is required to show that each ground alleged in the motion for summary judgment was insufficient to support summary judgment. *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995).

### Malicious Prosecution

In two issues, Summerville contends that the summary judgment was improper because (1) appellees initiated his prosecution on the basis of something other than a reasonable belief that he was guilty and (2) Smith admitted that he did not have any knowledge or evidence that Summerville was guilty of criminal trespass at the time that the prosecution was initiated.

 A plaintiff in a malicious criminal prosecution claim must establish

(1) the commencement of a criminal prosecution against the plaintiff;

(2) causation (initiation or procurement) of the action by the defendant;

(3) termination of the prosecution in the plaintiff's favor;

(4) the plaintiff's innocence;

(5) the absence of probable cause for the proceedings;

(6) malice in filing the charge; and

(7) damage to the plaintiff.

*Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex.1997). Here, Summerville asserts that there was no probable cause. Probable cause is defined as "the existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor [complainant], that the person charged was guilty of the

---

**2.** The motion for summary judgment also addresses Summerville's false imprisonment and intentional infliction of emotion distress claims, which he has since abandoned.

crime for which he was prosecuted." *Id.* The probable cause element asks whether a reasonable person would believe that a crime has been committed given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were instituted. *Kroger Tex. Ltd. P'ship v. Suberu,* 216 S.W.3d 788, 792–93 (Tex.2006); *Richey,* 952 S.W.2d at 517. Courts must presume that the defendant acted reasonably and had probable cause to initiate criminal proceedings. To rebut this presumption, the plaintiff must produce evidence that the motives, grounds, beliefs, or other information upon which the defendant acted did not constitute probable cause. *Suberu,* 216 S.W.3d at 793.

■ To prevail in a malicious prosecution case, the plaintiff must prove not only that defendant commenced criminal proceedings against him and he is innocent of the crimes charged, but also that the defendant lacked probable cause *and* harbored malice toward him. *Id.* at 792. Malicious prosecution actions involve a delicate balance between society's interest in the efficient enforcement of the criminal law and the individual's interest in freedom from unjustifiable and oppressive criminal prosecution. *Richey,* 952 S.W.2d at 517. Accordingly, there is an initial presumption in malicious prosecution actions that the defendant acted reasonably and in good faith and had probable cause to initiate the proceedings. *Id.* That presumption disappears once a plaintiff produces evidence that the motives, grounds, beliefs, and other evidence upon which the defendant acted did not constitute probable cause. *Id.* at 518. The burden then shifts to the defendant to offer proof of probable cause. *Id.*

■ Whether probable cause is a question of law or a mixed question of law and fact depends on whether the parties dispute the underlying facts. *Id.* When the facts underlying the defendant's decision to prosecute are disputed, the trier of fact must weigh evidence and resolve conflicts to determine if probable cause exists, as a mixed question of law and fact. *Id.* It has long been true, however, that, "[w]hen the facts are not contested, and there is no conflict in the evidence directed to that issue, the question of probable cause is a question of law which is to be decided by the court." *Id.* (quoting *Ramsey v. Arrott,* 64 Tex. 320, 323 (1885)); *see also Landa v. Obert,* 45 Tex. 539, 543 (1876) ("[w]hat facts and circumstances amount to probable cause is a pure question of law"). Probable cause in this case, in which the facts and events leading up to Summerville's arrest are undisputed, is therefore a question of law for the court and not the trier of fact. *See Richey,* 952 S.W.2d at 518.

**Probable Cause**

■ In issue one, Summerville contends that the summary judgment was improper because appellees initiated his prosecution on the basis of something other than a reasonable belief that he was guilty.

■ Because lack of probable cause in this case is a question of law, the issue for the Court is whether the undisputed facts underlying the decision to prosecute support a reasonable belief that Summerville was guilty of criminal trespass. A person commits the offense of criminal trespass if he enters or remains on or in property of another without effective consent or he enters or remains in a building of another without effective consent and he (1) had notice that the entry was forbidden or (2) received notice to depart but failed to do so. TEX. PEN.CODE ANN. § 30.05 (Vernon Supp. 2006). "Notice" includes a sign posted on the property or at the entrance

to the building, reasonably likely to come to the attention of intruders, indicating that entry is forbidden. *Id.* In the malicious prosecution context, whether a person acted based upon probable cause is a question of reasonableness. *Richey,* 952 S.W.2d at 517. That is, it is a question of whether the complainant honestly and reasonably believed that another's actions were criminal. *Id.*

Here, it is undisputed that Summerville entered an area of the mall without effective consent and there were signs posting notice that the entrance was forbidden. Summerville argues, however, that "the record is replete with conflicting evidence regarding improper motives and racial bias in initiating the prosecution for criminal trespass." Citing to *Suberu,* Summerville contends that evidence of racial animus destroys the presumption of probable cause showing intention of a criminal prosecution on the basis of something other than the reasonable belief of a person's guilt. He further argues that, "based on evidence that Summerville's prosecution for criminal trespass was based on motives, grounds, and beliefs other than probable cause, summary judgment was improper." We disagree.

*Suberu* holds that, to prevail in a malicious prosecution case, plaintiff must prove not only that defendant commenced criminal proceedings against him and he is innocent of the crimes charged, but also that the defendant lacked probable cause *and* harbored malice toward him. *Suberu,* 216 S.W.3d at 792. In other words, once the plaintiff produces evidence that the defendant harbored malice toward him and thus, lacked probable cause, the presumption that the defendant acted reasonably, in good faith, and had probable cause disappears, and the burden shifts to the defendant to prove probable cause. *See Richey,* 952 S.W.2d at 518.

Summerville does not deny that he entered a restricted area. He simply contends that, because of racial profiling, he was arrested for doing so. We hold that appellees carried their burden of proving that there was probable cause to arrest Summerville for criminal trespass. Accordingly, we overrule issue one.

**Absence of Belief in Guilt**

In issue two, Summerville contends that Smith admitted that he did not have any knowledge or evidence that Summerville was guilty of criminal trespass at the time that the prosecution was initiated, thus negating probable cause and establishing "impropriety of process." Summerville directs us to the following exchange, which took place during Smith's deposition:

Q. I mean do you have any explanation for me today, Mr. Smith, as to, No. 1, why you're listed as the complainant on Exhibit 1? Do you know why?

A. First of all, you—you're blending two different offenses. The offense that Thornburg responded to was not a criminal trespass.

He responded to a complaint in a jewelry store of a suspicious male that was believed by the complainant to the be the snatch-and-grab suspect. That's what he was responding to. That's where the Glock came from. That's where the arrest happened.

How it degenerated into a criminal trespass, you're going to have to ask Thornburg. I didn't sign a complaint. I did not make a complaint. A Houston policeman arrested him. A Houston policeman came and got him, and that's about all I know about it.

Q. You did not initiate the complaint for criminal trespass against my client?

A. No, sir.

Q. Is that what you're telling me?

A. Yes, sir.

Q. And that's because you don't have any evidence that he was guilty of criminal trespass, correct?

A. Actually, I didn't until you told me about his following Lauren back into a restricted area.

Q. Well, you knew about that before your deposition today.

A. Yes, sir. I didn't know it was in evidence.

Summerville contends that Smith, the complainant, did not believe Summerville was guilty of criminal trespass, thus negating the probable cause and rendering summary judgment improper. Thornburg testified, however, that he needed "a person to file charges, to be the complainant," and Smith was "a representative of the mall." Thornburg testified that he detained Summerville because "he had gone back in the access hallways." Thus, it was Thornburg, and not Smith, who initiated charges against Summerville for criminal trespass.

■ Citing to *Suberu*, Summerville further argues that "racial animus can be the basis of negating probable cause and proving that a defendant's motives do not support a reasonable belief that the plaintiff was guilty of criminal trespass." We disagree. *Suberu* stands for the proposition that, once a plaintiff has produced evidence of racial animus, the presumption that the defendant had probable cause is negated, and the burden shifts back to the defendant to prove probable cause. *Suberu*, 216 S.W.3d at 793. Here, probable cause was established by the uncontested evidence that Summerville entered a restricted area.

We overrule issue two.

## Conclusion

We affirm the trial court's judgment.