ACCEPTED
04-13-00608-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
4/9/2015 3:16:37 PM
KEITH HOTTLE
CLERK

# NO. 04-13-00608-CV

IN THE TEXAS COURT OF APPEALS FOR THE FOURTH DISTRICT
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
4/9/2015 3:16:37 PM
KEITH E. HOTTLE
Clerk

\* \* \* \* \*

**SMITH-REAGAN & ASSOCIATES, INC., D/B/A
SMITH-REAGAN INSURANCE AGENCY,**

**APPELLANT,**

**V.**

**FORT RINGGOLD LIMITED, PETE DIAZ III,
AARON DIAZ and MONICA AGUILLON,**

**APPELLEES.**

\* \* \* \* \*

On Appeal from the 381st Judicial District Court
Starr County, Texas
District Court Cause No. DC-02-343

\* \* \* \* \*

**APPELLEES' _EN BANC_ MOTION FOR REHEARING**

\* \* \* \* \*

Respectfully submitted,

Brendan K. McBride
State Bar No. 24008900
Brendan.McBride@att.net
MCBRIDE LAW FIRM, of Counsel
  to GRAVELY & PEARSON, LLP
425 Soledad, Suite 620
San Antonio, Texas 78205
(210) 227-1200 Telephone
(210) 881-6752 Facsimile

Matthew R. Pearson
State Bar No. 0078817
mpearson@gplawfirm.com
GRAVELY & PEARSON, LLP
425 Soledad, Suite 600
San Antonio, Texas 78205
(210) 472-1111 Telephone
(210) 472-1110 Facsimile

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ............................................................................... 2

TABLE OF AUTHORITIES ........................................................................ 3

INTRODUCTION & SUMMARY .................................................................. 1

ARGUMENT & AUTHORITIES ................................................................... 4

   A. The Court Must Review The Entire Record and All of the Evidence To Resolve a Challenge to the Legal Sufficiency of the Evidence. ............................................. 6

   B. There Was Evidence Of How Business Interruption Would Have Been Determined. ....................................................................... 6

   C. Smith-Reagan's Own Brief Contradicts The Court's Conclusion. ........................ 9

CONCLUSION & PRAYER ........................................................................ 12

CERTIFICATE OF SERVICE ..................................................................... 13

CERTIFICATE OF COMPLIANCE ............................................................... 13

# TABLE OF AUTHORITIES

**Page**

Cases

*City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005)............................................................ 6

*Dow Chem. Co. v. Francis*, 46 S.W.3d 237 (Tex. 2001)........................................................... 6

*Henson v. Reddin*, 358 S.W.3d 428 (Tex.App. – Fort Worth 2012, no pet.)...................... 6

*Hidden Forest Homeowners Ass'n v. Hern*, No. 04-10-00551-CV, 2011 Tex. App. LEXIS 9566, 2011 WL 6089881 (Tex. App. -- San Antonio 2011, no pet.)(to be published)6

*Kroger v. Texas Ltd. Parnership v. Suberu*, 216 S.W.3d 788 (Tex. 2006)............................... 6

*Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706 (Tex. 1997).......................................... 6

*Smith-Reagan & Assocs. v. Fort Ringgold Ltd.*, No. 04-13-00608-CV, 2015 Tex. App. LEXIS 2291, 4 (Tex. App. -- San Antonio Mar. 11, 2015, no pet. h.)(mem. op.)...... 2

## INTRODUCTION & SUMMARY

The Panel's opinion in this case overlooks certain key record evidence related to the proof of damages that is inconsistent with the Panel's conclusions about the record, and necessarily requires a different legal result than reached by the Panel. Given that the Panel's opinion and judgment is based on a sufficiency of the evidence challenge, the Court must review *all* of the evidence on the record to determine whether there is at least a scintilla of evidence to support the jury's verdict. Considering all of the evidence on the record – as the Court must – the Panel's conclusion that the evidence does not support the amount of business income loss sustained by the Hotel is erroneous and should be corrected on rehearing *en banc*.

This is a dispute over the failure by an insurance agent to obtain all of the coverage requested for the Fort Ringgold Motor Inn in Rio Grande City, Texas ("the Hotel"). Appellees, Fort Ringgold Limited, Pete Diaz III, Aaron Diaz and Monica Guillon (collectively "Fort Ringgold") were unable to obtain insurance benefits for "business interruption" losses when a massive rain storm caused massive damage disabling many of the rooms and causing a significant loss of income for the Hotel. Fort Ringgold brought this claim against its insurance agent, Smith-Reagan & Associates, Inc. d/b/a Smith-Reagan Insurance Agency ("Smith-Reagan") to recover damages for Smith-Reagan's failure to include business interruption coverage on the property insurance policy for the Hotel.

1

In its opinion and judgment reversing rendering a take nothing judgment, the Panel concluded that there was no evidence presented on the record to show the amount of damages sustained by the Hotel as a result of Smith-Reagan's failure to obtain requested business interruption coverage. The Panel's opinion begins with the statement that there was no evidence of how business interruption damages would have been calculated had the coverage been obtained. *Smith-Reagan & Assocs. v. Fort Ringgold Ltd.*, No. 04-13-00608-CV, 2015 Tex. App. LEXIS 2291, 4 (Tex. App. – San Antonio Mar. 11, 2015, no pet. h.)(mem. op.). However, since no coverage was actually obtained, there is no way to prove what it would have been. At most, there would be evidence of what it *probably* would have been. And there was such evidence. David Surles, Smith-Reagan's insurance expert, explained to the jury how business interruption coverage usually works and how the loss would be calculated – it would be based off net profit. Indeed, as explained below, Smith-Reagan's own brief to the Court conceded that there was evidence from Surles about how the loss would have been calculated.

The Court then focused mainly on Pete Diaz's testimony about the loss of gross revenues from the loss of use of many of the Hotel's rooms and concluded that business interruption insurance would not have provided coverage for loss of total gross revenue. On that basis, the Court reversed and rendered a take nothing judgment against Fort Ringgold. It is true that business interruption coverage probably would not have paid the total gross revenue for all of the damaged rooms.

2

However, there was other critical evidence that *does* show the amount of coverage the Hotel probably would have been paid for business interruption losses had Smith-Reagan not failed to obtain the coverage. Specifically, Surles explained to the jury that the gross sales figure would have to be adjusted for the historical occupancy rate to arrive at how much gross revenue was lost, and then adjusted for expenses.

Thus, the jury heard that there were three items of information that were generally necessary to determine how much would have been paid had a standard business interruption policy been obtained for the Hotel: (1) the amount of gross revenue lost for all the unusable rooms; (2) the likely occupancy rate to determine how many of those damaged rooms were likely to have been rented had they not been damaged; and, (3) evidence of the difference in expenses due to the shutdown of some of the rooms. There was evidence of all three of these items.

1. Pete Diaz testified about what would the gross rental income from all of the damaged rooms would have been had they all been rented ($1.176 million).

2. Surles testified that he had reviewed historical occupancy data for the Hotel and told the jury the percentage applicable to adjust the gross revenue to reflect the likely occupancy rate (57%).

3. Diaz testified that the Hotel had to keep its staff, pay insurance, mortgage and other recurring expenses and had no substantial change in operating expenses because of the damaged rooms.

Thus, there was evidence from which the jury could determine the Hotel had lost as much as $670,320 (57% of $1.176 million, with no reduction for expenses). The jury awarded $325,000 for losses that "would not have occurred had [Smith-

3

Reagan] procured insurance for Fort Ringgold that included coverage for business interruption." (CR5:181)

There was more than a scintilla of evidence to support the jury's determination of damages. If the Panel does not grant rehearing, the Court should grant rehearing *en banc* and consider these additional facts that support the jury's award of damages.

## ARGUMENT & AUTHORITIES

The Panel's opinion and judgment are based solely on the ground that there was legally insufficient evidence of the amount of damages awarded to Fort Ringgold by the jury. The Panel's opinion does not address the evidence showing there was an agreement by Smith-Reagan to procure a policy with business interruption coverage for the Hotel. As discussed in Appellees' original briefing, there was sufficient evidence that there was such an agreement, including statements by the agent involved for Smith-Reagan, its Vice-President, that he had offered business interruption coverage but Diaz had declined it, and Pete Diaz's testimony that he did not decline any of the coverage offered by Smith-Reagan except an "umbrella" policy. There was also evidence that Smith-Reagan had forms it would use to document when a client was declining offered coverage, and that business interruption coverage for a hotel would have been important and even "critical" for a hotel and there would have been an "in depth" discussion if the Hotel had declined the coverage as Smith-Reagan's Vice-President claimed. (Appellees' Brief at 1-5, 11-17) There was no

4

dispute that Smith-Reagan did not, in fact, obtain business interruption coverage for the Hotel.

The Panel's opinion also does not address the sufficiency of the evidence that the Hotel suffered massive storm damage that left 2/3 of the rooms unusable. (See Appellees' Brief at 5-7) Indeed, the property insurer for the Hotel, which provided coverage for property damage but not losses of business income (because Smith-Reagan had not obtained business income coverage), instructed the Hotel to shut down the badly damaged rooms. (RR5:108-111) Thus, there was no dispute that the Hotel lost the ability to use 2/3 of its rooms to generate income.

The sole basis for the Panel's judgment reversing and rendering a take nothing judgment against Fort Ringgold is its conclusion that the record did not establish *how much* Fort Ringgold would have been paid in insurance benefits for loss of business income had Smith-Reagan obtain the requested business interruption insurance coverage. Given the record and the standard of review applicable to a post-verdict evidentiary sufficiency challenge, the Court should grant rehearing *en banc* and reconsider all of the evidence on the record. Considering all of the record, there is more than a scintilla of evidence to support the jury's award of $325,000 in actual damages.

**A. The Court Must Review The Entire Record and All of the Evidence To Resolve a Challenge to the Legal Sufficiency of the Evidence.**

The basis for the Panel's opinion is a legal sufficiency challenge to the evidence of Fort Ringgold's damages as awarded by the jury. A court must examine the "entire record" to determine if there is some evidence to support the finding. *Hidden Forest Homeowners Ass'n v. Hern*, No. 04-10-00551-CV, 2011 Tex. App. LEXIS 9566, 19, 2011 WL 6089881 (Tex. App. -- San Antonio 2011, no pet.)(mem. op.)(*citing Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001)).

The Court must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005); *Henson v. Reddin*, 358 S.W.3d 428, 434 (Tex.App. – Fort Worth 2012, no pet.). A legal sufficiently challenge fails when the offered evidence exceeds a "scintilla." *Kroger v. Texas Ltd. Parnership v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006), *citing City of Keller*, 168 S.W.3d at 810. More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, would enable reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

**B. There Was Evidence Of How Business Interruption Would Have Been Determined.**

The Panel's analysis starts with the proposition that Fort Ringgold failed to produce a copy of a policy showing how business income losses would have been

calculated had Smith-Reagan not failed to obtain it. There is no way to say for certain what the coverage would have been or how it would have been calculated because it would be a function of the endorsement that was not obtained. While there could have been copies of exemplar endorsements from other policies introduced to show the jury how the endorsement *might* have worked, that would not be the only way to provide a scintilla of evidence from which a jury could determine how business interruption losses would be determined.

Here, there was testimony from David Surles that business interruption coverage is intended to provide benefits to replace lost "net profit plus the expenses that continued during the suspension of operations. So, profit plus continuing expenses during the period of suspension of operations is what business interruption insurance policy [sic] pays for." (RR7:217) Thus, there was more than a scintilla of evidence of what benefits would be provided by a policy with a business interruption coverage endorsement even without an exemplar endorsement from some other policy. Indeed, an exemplar from another policy would not be as probative as the evidence here, since there really is no telling whether a particular form of endorsement would have been sold with this policy had it been requested. Here, however, there was evidence of the sort of losses for which these policies are intended to compensate the insured, and as detailed below, an explanation based on an expert witness's knowledge how the loss would have been calculated.

7

There was also evidence as to how the amount of lost net profits should be calculated for purposes of determining business interruption losses. When Surles critiqued Pete Diaz's claim that the Hotel's lost business interruption coverage was equal to the total amount of the lost income for all of the rooms – the $1.176 million figure the Panel discussed in its opinion – Surles explained that this number would have to be adjusted to reflect the historical occupancy rate for the Hotel, since 100% of the rooms would not be rented every night. (RR7:215-16) This adjustment was based on what Surles knows "about business interruption insurance and how it would have paid . . ." (Id.)

The jury did not need to guess what this historical occupancy rate was, either. Surles reviewed the documents and testified that Hotel records showed the occupancy rate was around 57% prior to the storm damage. (RR7:216, 218-19)

The jury likewise heard that "net profit" is simply gross income less expenses. (RR5:139-140). Once the gross income was calculated and adjusted to the occupancy rate, the only thing that remained was to determine what effect the loss had on the Hotel's expenses to arrive at the lost net profit from those rooms being unusable. There was also evidence of the effect of the damage on the Hotel's expenses. Pete Diaz explained to the jury that substantially all of the Hotel's expenses remained the same because Fort Ringgold was still trying to keep the Hotel operating while 2/3 of the rooms were unusable. Diaz testified that the expenses would be the same for the whole period – they were recurring monthly expenses that do not go up or down

8

from month-to-month based on the amount of occupancy. (RR5:138-140, 194)(Q: "So even though the revenues decreased, the expenses still stayed the same?" A: "That is correct.")

Of course, gross income equals profit plus expenses - or put another way, net profit is gross income less expenses. (Id.) If the expenses remained the same with 2/3 of the rooms shut down (and the expenses did remain the same, according to the evidence), then the lost revenue from those rooms was the same thing as lost net profit once those numbers are adjusted to the occupancy rate the jury heard about from Surles. The jury had all it needed to calculate how much the business interruption loss would have been based on what Surles explained about business interruption insurance and how it would have paid, and applying that to the gross sales number and evidence about expenses they heard from Pete Diaz.

### C. Smith-Reagan's Own Brief Contradicts the Panel's Conclusion That There Was No Evidence of How Business Interruption Loss Would Have Been Calculated.

Critically, in their brief to the Court, these two issues – occupancy rate and change in expenses – were the two arguments Smith-Reagan actually raised about the sufficiency of the evidence to support the jury's determination of damages. (Appellant's Brief at 33-34) This is the likely reason for the Panel reaching a conclusion about the evidence for damages that is not consistent with the record – Smith-Reagan did not argue the sufficiency of the evidence as it relates to damages in the way that the Panel decided that legal issue. Had Smith-Reagan tried to argue that

9

there was no evidence of how business interruption would have been calculated, Appellants would have much more explicitly called the Court's attention to the fact that there most certainly was evidence of how the coverage for business interruption likely would have been calculated. But Smith-Reagan did not make that argument – because the record cannot support it.

Rather, Smith-Reagan actually *agreed* that the record included evidence of the method of calculating lost business interruption benefits – and characterized it in the same manner as discussed above. On page 33 of its brief, Smith-Reagan stated:

> The evidence presented by Defendant's expert witness, David Surles, was that payment for business interruption loses is determined by calculating profit plus continuing expense during the period of suspension of operations. [citation omitted] Instead of presenting evidence as to the motel's profit, Plaintiffs presented evidence as to the motel's gross sales.

Smith-Reagan then went on to explain the two specific pieces of evidence that it claimed were necessary to do the business interruption loss calculation. First, that Pete Diaz's gross sales number of $1.176 million did not include "evidence of the amount of expenses that would have continued during the period the motel's business was interrupted." And second, "[h]e did not know the occupancy rate." (Appellant's Brief at 34)

Contrary to what the Panel explained in its opinion, there definitely was evidence of how business interruption losses would likely have been calculated – i.e. gross sales adjusted for occupancy rate less any change in operating expenses. Smith-

Reagan conceded as much in its brief – stating that Surles explained the calculation and challenging only whether there was evidence of the occupancy rate and expenses. (Appellant's Brief at 33-34)

Thus, the issue is really whether there was evidence of the effect on the damaged rooms on the ongoing operating expenses and evidence of the occupancy rate for the Hotel – the two issues raised in Smith-Reagan's brief. As explained in more detail above, there was evidence before the jury on both issues. Pete Diaz specifically testified that the Hotel's operating expense was the same even with the damaged rooms not generating revenue for the Hotel. And Surles testified that the occupancy rate would have been 57%. The Court must consider the *entire* record in ruling on a legal sufficiency challenge. There is no reason why a plaintiff cannot rely on the testimony of the opposing party's witnesses to support their case.

Here, taking the *entire* record, including Pete Diaz's testimony about gross sales and expenses, and Surles's testimony about how business interruption loss is calculated and the occupancy rate, the jury had evidence of all the elements necessary to determine what the business interruption loss would likely have been had Smith-Reagan not failed to obtain the coverage as agreed. The evidence supports substantially more than the $325,000 awarded by the jury for actual damages.

There was more than a scintilla of evidence of how much Fort Ringgold likely lost in insurance benefits as a result of Smith-Reagan's failure to procure the business interruption insurance. If the Panel does not grant rehearing, then the Court should

11

grant rehearing *en banc,* and on a review of the entire record, substitute an opinion vacating the Panel's judgment and affirming the judgment for Fort Ringgold.

## CONCLUSION & PRAYER

The Court's opinion is based on conclusions about the evidence that are at odds with the record. Given the narrow standard of review that prohibits the Court from substituting its view of the evidence for that of a jury, and that limits reversal only to those instances where there is less than a scintilla of evidence, the Court was mistaken in concluding there was legally insufficient evidence to support the amount of actual damages found by the jury.

To the contrary, both parties agree that Surles *did* testify about how business interruption loss likely would have been calculated. Smith-Reagan's actual complaint was that Fort Ringgold did not produce evidence of what the ongoing expenses were or the occupancy rate. However, applying the standard of review applicable to legal sufficiency challenges and reviewing the entire record, as the Court must, there was at least a scintilla of evidence on both of these matters.

The Court should grant rehearing and vacate its opinion and judgment in this matter. The judgment should be affirmed in its entirety.

Respectfully submitted,

_____

Brendan K. McBride
State Bar No. 24008900

12

Brendan.mcbride@att.net
THE MCBRIDE LAW FIRM
 Of Counsel to
GRAVELY & PEARSON, L.L.P.
425 Soledad, Suite 620
San Antonio, Texas 78205
(210) 227-1200 Telephone
(210) 881-6752 Facsimile

And

Matthew R. Pearson
State Bar No. 00788173
mpearson@gplawfirm.com
GRAVELY & PEARSON, L.L.P.
425 Soledad, Suite 600
San Antonio, Texas 78205
Telephone: (210) 472-1111
Facsimile: (210) 472-1110

COUNSEL FOR APPELLEES

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded on this 9th day of April 2015 to Appellant's lead appellate counsel via email and via electronic service through Texas.gov.

_____
Brendan K. McBride

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief is in compliance with the rules governing the length of briefs prepared by electronic means.  The brief was prepared using Microsoft Word 2010.  Garamond 14 pt. font was used for the body, and Garamond 12 pt. font was used

for footnotes. According to the software used to prepare this brief, the total word count, including footnotes, but not including those sections excluded by rule, is 3,013

_____

Brendan K. McBride