

# IN THE
# TENTH COURT OF APPEALS

### No. 10-11-00450-CV

**SADDLE BROOK WEST APARTMENTS,**

                                                                **Appellant**

 **v.**

**SUNG JOON JANG AND SUNMI A. JANG,**

                                                                **Appellees**

### From the County Court at Law No. 2
### McLennan County, Texas
### Trial Court No. 20091196 CV2

## MEMORANDUM OPINION[1]

Saddle Brook West Apartments sued Sung Joon Jang and his wife, Sunmi A. Jang

for breach of a lease agreement and for damages to the apartment the Jangs rented.  A

judgment was entered for the Jangs in the justice court.  Saddle Brook appealed, and a

trial *de novo* was held in the county court at law.  The jury found the Jangs breached the

---

[1] We issued a memorandum opinion in this proceeding on April 25, 2013.  After an extension of time was granted, Saddle Brook timely filed a motion for rehearing on May 28, 2013.  Saddle Brook challenged certain "conclusions" it felt the Court made that Saddle Brook considered conflicting.  To clarify our opinion and address Saddle Brook's justifiable concerns about how we phrased certain statements, we withdraw our opinion and judgment of April 25, 2013 and substitute this opinion and an amended judgment.

lease agreement but also that the breach was excused. Saddle Brook again appealed. Because the evidence is sufficient to support the affirmative defense of equitable estoppel, we affirm the trial court's judgment.

## BACKGROUND

Sung Joon Jang had accepted a position as a professor with Baylor University. He and his family were moving from Louisiana and had to find temporary housing in the Waco area while they looked for a house to buy. They settled on an apartment at the Saddle Brook West Apartments. A year later, when they gave their notice to move out because they had found a house, the Jangs opted not to conduct a move-out walk-through with the apartment manager. To their surprise, the Jangs were then charged for damages to the apartment they said they did not cause.

## SUFFICIENCY OF THE EVIDENCE

In its sole issue, Saddle Brook argues the trial court erred by entering judgment for the Jangs because the evidence was legally insufficient to support the Jangs' affirmative defenses of estoppel, fraud, prevention of performance, and impossibility. In conducting a legal sufficiency review, we view the evidence in the light most favorable to the verdict, credit favorable evidence if a reasonable juror could, and disregard contrary evidence unless a reasonable juror could not. *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). A legal sufficiency issue will be sustained only if the record reveals

one of the following: (1) the complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence established conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 827.

*Equitable Estoppel*

In response to Question No. 3 of the Charge of the Court, the jury found Saddle Brook was estopped from claiming a breach of the lease agreement because of Saddle Brook's words or conduct. Equitable estoppel is based on the principle that "one who by his conduct has induced another to act in a particular manner should not be permitted to adopt an inconsistent position and thereby cause loss or injury to the other." *Maguire Oil Co. v. City of Houston*, 69 S.W.3d 350, 367 (Tex. App.—Texarkana 2002, pet. denied). Equitable estoppel is established when "(1) a false representation or concealment of material facts; (2) is made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515-16 (Tex. 1998). Saddle Brook argues that there is no evidence of a false representation or concealment of material facts or of detrimental reliance.

*False Representation or Concealment of Material Facts*

The Jangs each testified that when they were sent the lease agreement, they had concerns about language stamped on the lease which read, "If resident does not walk apt. with manager upon move out, resident will pay all damage charges assessed by the manager."[2] They assumed that this meant they would be charged for any damage done by them. They signed the lease, initialed the stamped language, and sent the lease back to Saddle Brook. When they arrived at Saddle Brook to move in, they asked Tammy Williams, the only staff member of Saddle Brook at the office, whether this language meant that they would be charged only for damage they caused. Ms. Williams agreed that was what the language meant. Williams did not testify at trial.

When they entered their apartment for the first time, they noticed that the carpet was old and stained. They also noticed that a new cutting board had been glued or caulked to the counter top, next to the stove. They testified that they did not cause the stains on the carpet or glue the cutting board to the countertop. Shortly after move-in,

---

[2] In its motion for rehearing, Saddle Brook argues: "the jury's finding that the Jangs breached the lease necessarily includes the finding that they were liable for the damages for which they were charged. Otherwise, the jury determined that the Jangs breached the lease by failing to pay for damages they did not cause." We disagree with Saddle Brook's logic. As later argued in its motion for rehearing, "The key question is how the Jangs breached the lease." And as Saddle Brook stated earlier in the motion for rehearing, "Saddle Brook sued the Jangs for failing to pay amounts owing including damages caused to the apartment and the jury found the Jangs breached the lease. (2 CR 274; 6 CR 981)." Motion for Rehearing, pg. 1. Thus, it does not logically follow that the jury finding of breach by the Jangs means the Jangs caused the damages they were assessed. Among other potential breaches as alleged by Saddle Brook would have been for the admitted failure to pay the assessed amount for damages. But supporting the jury's response that the breach was excused would be a determination they did not cause the damages for which they were assessed. In essence, the Jang's breach of the contract found by the jury in question one could be the failure to pay what was assessed as damages by Saddle Brook but that breach was excused because Saddle Brook assessed amounts that were not owed.

Sung Joon twice asked the Saddle Brook management to replace the carpet. His requests were denied. Church friends, Dr. Yung Lho and Min Lho, visited the Jangs' apartment soon after they moved in. The Lhos each testified that they noticed the carpet was old, dirty, and stained in various spots. Dr. Lho also noticed a cutting board glued to the countertop. He asked Sunmi if she placed it there. She replied to him that she did not.

The Jangs each testified that at the time they moved out of their apartment, they inquired about the walk-through. Sung Joon stated that he initially gave notice of moving out in April of 2008. He asked Tysh Haigood about the walk-through. She told him just to make sure the apartment was clean and to replace the non-working light bulbs. On July 11, 2008 when Sung Joon emailed Haigood about move-out issues, Sung Joon received a response from Haigood indicating she would be happy to conduct a walk-through at Sung Joon's convenience and all he would have to do was contact the front office. He called the front office to schedule a walk-through and spoke to Amanda Hines. Hines questioned Sung Joon whether he really wanted to conduct the walk-through. When Sung Joon said he did not unless he had to, Hines told Sung Joon he did not have to do the walk-through. Hines told Sung Joon all he had to do was turn in the keys and "we'll take care of it." On July 30, 2008, Sunmi returned the keys to the apartment. Because the manager was busy, she returned the keys to Hines and asked Hines about the walk-through. Hines asked Sunmi if she really wanted to do that.

Sunmi replied that she did not, but had to. Hines told Sunmi that she did not have to do the walk-through and to just return the key. Hines did not testify at trial.

The Jangs testified that they did not do any of the damage to the carpet and countertop claimed by Saddle Brook and were not aware that they would be charged for damages done by others.

At the very least, the statement by Tammy Williams to the Jangs that they would only be charged for damage they had done to the apartment if they did not participate in a walk-through at move-out was a false misrepresentation or concealment of material fact. Further, Amanda Hines concealed a material fact when she did not warn the Jangs that they would be charged with any damage to the apartment, even if they did not cause the damage, when she told the Jangs they did not have to do the walk-through. The Jangs testified they did not participate in a walk-through, did not cause the damage to the carpet and countertop, and were charged for the damage. Saddle Brook did not offer evidence that directly controverted the Jangs' testimony as to what Williams and Hines told them although Saddle Brook did controvert their testimony as to whether the Jangs caused the damage to the apartment.

After reviewing the evidence under the appropriate standard, we find the evidence is legally sufficient to support this prong of equitable estoppel.

*Detrimental Reliance*

As to the detrimental reliance prong of equitable estoppel, Saddle Brook argues

that any reliance by the Jangs on the representations of Saddle Brook's staff was unreasonable because, it argues, reliance on an oral representation that contradicts the unambiguous written terms of a contract is not reasonable and reliance on representations by a person who has no authority is not reasonable. *See DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.—Houston [14th Dist.] 2003, pet. denied), *Chambless v. Barry Robinson Farm Supply, Inc.*, 667 S.W.2d 598, 603 (Tex. App.—Dallas 1984, writ ref'd n.r.e.). Thus, the argument continues, the Jangs could not have relied on any representations by Saddle Brook staff to their detriment. We disagree with Saddle Brook's arguments.

The stamped language on the lease, "[i]f resident does not walk apt. with manager upon move out, resident will pay all damage charges assessed by the manager," was less than clear. The Jangs could not believe that it meant the manager could assess charges for damages not caused by them; but the Jangs were not sure. They asked Saddle Brook staff for clarification and were told that they would not be assessed charges for damages they did not cause. Notwithstanding this representation to the Jangs, the Jangs testified that the Saddle Brook manager assessed charges for damages the Jangs said they did not cause. Saddle Brook did not directly controvert the Jangs' testimony. If anything, the oral representation made by staff clarified the language of the lease; it did not contradict it. Thus, the Jangs' reliance on the representations by Saddle Brook staff were reasonable.

Further, the Texas Supreme Court has held that, as a matter of law, a lease agreement which provides that "neither Landlord nor Landlord's agents, employees or contractors have made any representations or promises with respect to the Site, the Shopping Center or this Lease except as expressly set forth herein," and that "this lease constitutes the entire agreement between the parties hereto with respect to the subject matter hereof" does not defeat the reliance element of a claim of fraudulent inducement. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331, 336 (Tex. 2011). The Jangs' apartment lease contained similar language as the lease in *Italian Cowboy*:

> This Lease Contract is the entire agreement between you and us. Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements, that impose … other obligations on us or our representative unless in writing.

Saddle Brook claims the Jangs were charged with knowledge of this provision and therefore, the Jangs' reliance on representations by staff was unreasonable. However, like *Italian Cowboy*, this language does not evidence an intent by both parties to disclaim any reliance on oral statements made by Saddle Brook staff. *See id*. at 336. Thus, the Jangs' claim of detrimental reliance is not vitiated by this part of the lease agreement.

Accordingly, after reviewing the evidence under the appropriate standard, we find the evidence is legally sufficient to support this prong of equitable estoppel as well.

## CONCLUSION

Saddle Brook only challenged two of the five prongs of equitable estoppel, and we have found the evidence legally sufficient to support those prongs. Thus, the evidence is legally sufficient to establish the Jangs' affirmative defense of equitable estoppel. Because the evidence is legally sufficient to support one of the Jangs' affirmative defenses, we need not determine whether the evidence is legally sufficient to support each of the Jangs' other affirmative defenses. Saddle Brook's sole issue is overruled, and the trial court's judgment is affirmed.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed July 11, 2013
[CV06]