**AFFIRMED and Opinion Filed December 30, 2022**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-21-00750-CV**
_____

**NELLY SUAREZ GARCIA, Appellant**
**V.**
**LORRIE SEMLER, Appellee**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-04494**

## OPINION

Before Justices Myers, Nowell, and Rosenberg[1]
Opinion by Justice Rosenberg

Appellant Nelly Suarez Garcia sued appellee Lorrie Semler for defamation and malicious prosecution. Semler moved to dismiss the case under the Texas Citizens Participation Act (TCPA), and the trial court granted her motion. Garcia appeals, in six issues, complaining about the court's failure to hold an oral hearing,

---

[1] The Honorable Barbara Rosenberg, Justice, Assigned. The Honorable Justice Leslie Osborne participated in the submission of the case; however, she did not participate in issuance of this opinion due to her resignation on October 24, 2022. Justice Rosenberg succeeded Justice Osborne as a member of the panel after Justice Osborne's resignation from the Court.

consideration of Semler's evidence, and application of the TCPA. We conclude the trial court did not err by granting the motion to dismiss and affirm.

## BACKGROUND

In March 2020, Garcia filed her original petition against Semler, asserting claims for malicious prosecution and defamation. In her live petition, Garcia alleged the following facts:

On or before August 16, 2019, Semler placed several estate-sale yard signs around the Town of Addison in violation of an Addison sign ordinance. On August 16, 2019, Semler gave false information to Addison's police and prosecutor, claiming that Garcia had sought to deprive Semler of tangible personal property— namely, one of the estate-sale signs. This resulted in a criminal prosecution against Garcia for theft. Additionally, from August 16 to August 20, 2019, Semler published several defamatory statements about Garcia on Facebook.

The criminal prosecution against Garcia went to trial, and she was acquitted.

Semler answered and on May 26, 2020, filed a motion to dismiss under the TCPA, Chapter 27 of the Texas Civil Practice and Remedies Code. Semler argued that Garcia's claims for malicious prosecution and defamation were based on or in response to Semler's exercise of her right to petition and right of free speech, respectively. Semler also requested her court costs and reasonable attorney's fees.

In June 2020, Semler filed a notice that her motion to dismiss would be heard on July 15, 2020, at 11:00 a.m., and then she filed an amended notice that her motion would be heard on July 16, 2020, at 11:00 a.m.

On July 9, 2020, Garcia filed a response to Semler's TCPA motion to dismiss. The response included objections to evidence attached to Semler's motion to dismiss. On July 13, 2020, Semler filed a reply.

The trial court cancelled the oral hearing and announced it would consider Semler's TCPA motion on submission. The record reflects that this occurred on July 15 or 16, 2020. The fact that the trial court heard the motion by submission is reflected on the trial court's docket sheet, and it is asserted in Garcia's appellate brief without contradiction by Semler. *See* TEX. R. APP. P. 38.1(g).

On July 31, 2020, the trial court signed an order granting Semler's motion to dismiss and permitting Semler to submit additional evidence to support an award of attorney's fees and costs. Garcia appealed this order, but we dismissed her appeal for want of jurisdiction. *Garcia v. Semler*, No. 05-20-00761-CV, 2021 WL 1381156, at *1 (Tex. App.—Dallas Apr. 13, 2021, no pet.) (mem. op.).

In the interim, Semler filed evidence of her attorney's fees. On April 26, 2021, after we had dismissed Garcia's appeal, Garcia filed a motion for reconsideration in the trial court, arguing, among other things, that the TCPA required the trial court to hold a hearing but the trial court had not set a hearing on Semler's TCPA motion to

–3–

dismiss. Semler filed a response to the motion to reconsider on June 3, 2021, arguing, among other things, that the TCPA does not require an oral hearing.

On July 6, 2021, the trial court held an oral hearing on Garcia's motion to reconsider and later signed an order denying the motion. Semler also filed additional evidence about her attorney's fees.

On August 4, 2021, after a hearing about Semler's attorney's fees, the trial court signed a Final Judgment and Order Granting Attorneys' Fees. The trial court awarded Semler fees of $22,150.00, plus additional amounts for appellate attorney's fees, and postjudgment interest.

Garcia appealed the final judgment, raising the following six issues:

1. Whether the District Court should have held a hearing on the TCPA motion.

2. Whether Semler's evidence established the applicability of the TCPA to Garcia's claims.

3. Whether Garcia's unrebutted summary-judgment evidence established the required elements of Garcia's defamation claim.

4. Whether Garcia's unrebutted summary-judgment evidence established the required elements of Garcia's malicious-prosecution claim.

5. Whether Garcia's unrebutted summary-judgment evidence precluded as a matter of law Semler's defenses or inferential rebuttals to Garcia's malicious-prosecution claim.

6. Whether the District Court should have denied attorney's fees to Semler and actually awarded them against her.

## DISCUSSION

**A.** **Whether the TCPA requires the trial court to hold an oral hearing (Issue 1).**

In her first argument, Garcia contends that the trial court's judgment should be reversed because the trial court erred in cancelling the oral hearing on Semler's TCPA motion and instead granted the motion after considering it submitted on the parties' filings. Garcia argues the TCPA requires an oral hearing on a motion to dismiss. Both sides agree that no Texas court has decided whether the TCPA mandates an oral hearing, and we have found no such case. Whether an oral hearing is required for the submission of a TCPA motion to dismiss presents a question of statutory interpretation, so our standard of review is de novo. *See Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied).

Garcia recognizes *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998) (per curiam), for the proposition that "[u]nless required by the express language or the context of the particular rule, the term 'hearing' does not necessarily contemplate either a personal appearance before the court or an oral presentation to the court." But she then takes the position that we should interpret the TCPA as requiring an oral hearing for the same reasons the Supreme Court of Texas held that a rule 165a motion for reinstatement required an oral hearing in *Gulf Coast Investment Corp. v. NASA 1 Business Center*. *See* 754 S.W.2d 152, 153 (Tex. 1988) (per curiam) (holding trial court abused its discretion by refusing to hold an oral hearing on a rule 165a motion to reinstate an action dismissed for want of prosecution). Specifically, the *Gulf Coast* court held that rule 165a required an oral hearing because that rule required the judge to (1) set a hearing on a motion to

–5–

reinstate as soon as practicable and (2) notify all parties or their attorneys of the date, time, and place of the hearing. *Id*. Garcia argues that the TCPA is analogous to rule 165a because the TCPA repeatedly uses the word "hearing"[2] and also requires the movant to give written notice of the "date and time" of the hearing. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(d). She does not address the fact that the TCPA does not require notice of the "place" of a hearing, unlike rule 165a. *Compare id. with* TEX. R. CIV. P. 165a(3).

Semler responds that the TCPA does not require an oral hearing. She analogizes the TCPA to Texas summary-judgment practice, relying upon the Supreme Court of Texas's opinion in *Martin.* In that case, the court held that an oral hearing is not mandatory on a summary-judgment motion. 989 S.W.2d at 359. Semler argues that although the TCPA contemplates a hearing, there is no provision in the TCPA that expressly calls for a personal appearance or oral presentation to the trial court. Rather, she argues, the TCPA provides the same framework to dispose of a TCPA motion to dismiss as the summary-judgment framework found in rule 166a.

We agree with Semler. In *Martin*, the Supreme Court of Texas held that although rule 166a(c) calls for a hearing on a summary-judgment motion, an oral

---

[2] Garcia attempts to distinguish rule 166a from the TCPA by arguing that "a hearing under Rule 166a . . . is referred to only once in that rule" whereas "a hearing is contemplated no less than 13 times in the TCPA." This distinction is neither accurate nor persuasive. The word "hearing" appears within rule 166a more than once. And Garcia cites no authority to support her argument that the mere repeated use of the word "hearing" without more means that a personal appearance before, or an oral presentation to, the court is required, and we are aware of none.

–6–

hearing is not mandatory because "oral testimony cannot be adduced in support of or opposition to a motion for summary judgment." *Id.* The court further explained: "The hearing date determines the time for response to the motion; without notice of hearing, the respondent cannot know when the response is due." *Id.* Both reasons also apply to the current TCPA.

First, with respect to live testimony, before the 2019 amendments to the TCPA,[3] the Texas courts of appeals were split on the question about whether live testimony was permitted at a TCPA hearing. *See Columbia Valley Healthcare Sys., L.P. v. Pisharodi*, No. 13-18-00660-CV, 2020 WL 486491, at *6 n.9 (Tex. App.—Corpus Christi–Edinburg Jan. 30, 2020, no pet.) (mem. op.) (discussing the split). When the legislature amended § 27.006 in 2019, it authorized consideration of the kind of evidence that may be considered in the summary-judgment context. Section 27.006(a) now states as follows:

> In determining whether a legal action is subject to or should be dismissed under this chapter, the court shall consider the pleadings, ***evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure,*** and supporting and opposing affidavits stating the facts on which the liability or defense is based.

TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a) (emphasis added). As the *Martin* court held, rule 166a allows evidence only in certain forms and specifically states

---

[3] The previous version of the statute stated that "[i]n determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 964 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a)).

that "[n]o oral testimony shall be received at the hearing." TEX. R. CIV. P. 166a(c). Live testimony is also not enumerated within the list contained in § 27.006. Thus, we conclude that the TCPA, as amended in 2019, like rule 166a, does not permit the consideration of live testimony on the merits of a TCPA motion to dismiss.[4] In so concluding, we agree with our sister courts that have considered the question. *See Heavenly Homes of S. Tex., LLC v. Infinity Custom Constr., LLC*, No. 13-21-00298-CV, 2022 WL 2069232, at *7 (Tex. App.—Corpus Christi–Edinburg June 9, 2022, no pet.) (mem. op.); *Kadow v. Grauerholz*, No. 02-20-00044-CV, 2021 WL 733302, at *4 (Tex. App.—Fort Worth Feb. 25, 2021, no pet.) (mem. op.).

Second, with respect to deadlines established by the hearing date, the legislature also conformed TCPA procedure to summary-judgment procedure when it amended § 27.003 in 2019. Now, like rule 166a, the TCPA contains a requirement that a movant must provide twenty-one days' notice before a hearing, and the nonmovant's response to the motion is due seven days prior to the hearing. *Compare* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(d), (e) *with* TEX. R. CIV. P. 166a(c). Thus, the hearing date on a TCPA motion determines the nonmovant's response deadline, just like the hearing date in the summary-judgment context. *See* 989 S.W.2d at 359.

---

[4] We express no opinion on whether the TCPA permits the consideration of live testimony on other issues, such as attorney's fees.

Accordingly, under the current TCPA, oral testimony cannot be adduced in support of or opposition to the merits of a motion to dismiss, and the hearing date determines the nonmovant's deadline to file a response to the TCPA motion. Thus, the supreme court's analysis of rule 166a in *Martin* is more analogous to the TCPA than the court's analysis of rule 165a in *Gulf Coast*. Because we conclude that neither the express language nor the context of the TCPA, as amended in 2019, requires an oral hearing on the merits of a TCPA motion to dismiss, we conclude that a TCPA nonmovant is not entitled to an oral hearing on the merits of a TCPA motion. The current TCPA allows the "hearing" on the merits of a motion to dismiss to be conducted by submission.[5] As a result, the trial court did not err by cancelling the oral hearing on Semler's motion and instead ruling on the motion by submission.

We overrule Garcia's first issue.

**B.    Whether Semler's evidence in support of her TCPA motion was defective and requires reversal (Part of Issue 2).**

Semler's TCPA motion was verified and also supported by, among other things, the unsworn Declaration of Lorrie Semler. In her response to the motion, Garcia objected to various paragraphs of Semler's declaration and to one paragraph

---

[5] Garcia also cites various cases for the proposition that Semler may not avoid the occurrence of a hearing if she wishes to obtain relief under the TCPA. But this argument ignores the fact that the trial court considered the merits of Semler's TCPA motion by submission. None of the cases Garcia cites involve the trial court's consideration of the merits of a TCPA motion to dismiss by submission. *See Walker v. Pegasus Eventing, LLC*, No. 05-19-00252-CV, 2020 WL 3248476, at *2, 5–8 (Tex. App.—Dallas June 16, 2020, pet. denied) (mem. op.); *Grubbs v. ATW Invs., Inc.*, 544 S.W.3d 421, 422 (Tex. App.—San Antonio 2017, no pet.); *Daniels v. State of N.M.*, 538 S.W.3d 139, 151 (Tex. App.—El Paso 2017, pet. denied).

in the verified factual background section of Semler's TCPA motion. On appeal, Garcia argues that the evidence that Semler tendered with her TCPA motion was defective, that the trial court should have sustained Garcia's objections rather than ignored them, and that the judgment should be reversed. Specifically, Garcia objected to various statements in Semler's declaration and statements in the factual background section of Semler's motion on grounds of hearsay, best-evidence rule, speculation, self-serving, legal conclusion, or some combination thereof.

To preserve error for appeal, a party must make a timely request, objection, or motion and either (1) obtain an express or implied ruling from the trial court or (2) object to the trial court's refusal to rule. *See* TEX. R. APP. P. 33.1(a). Here, none of the trial court's orders contain any express ruling on Garcia's objections, and Garcia does not argue that the orders implicitly rule on her objections. Rather, her complaint is that the trial court ignored her objections.

Based on the record before us, however, we cannot conclude that the trial court refused to rule on Garcia's objections. Even if it had refused to rule, it was Garcia's obligation to object to the trial court's refusal to rule. *See* TEX. R. APP. P. 33.1(a)(2)(B). Garcia, however, does not argue that she ever objected to the trial court's refusal to rule, and the record does not reflect that she ever did so object.

Accordingly, we conclude that nothing is preserved for our review. *See Bibby v. Bibby*, 634 S.W.3d 401, 410 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (under the TCPA, as amended in 2019, evidentiary objections not preserved when party did

not object to failure to rule); *see also Chance v. CitiMortgage, Inc.*, 395 S.W.3d 311, 315 (Tex. App.—Dallas 2013, pet. denied) (in summary-judgment context, failure to obtain ruling in trial court on best-evidence objection waived objection on appeal); *Pico v. Capriccio Italian Rest., Inc.*, 209 S.W.3d 902, 909 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (in summary-judgment context, objections to hearsay and speculation were waived by failure to obtain a ruling); *Williamson v. New Times, Inc.*, 980 S.W.2d 706, 711–12 (Tex. App.—Fort Worth 1998, no pet.) (in summary-judgment context, complaint that affidavits were self-serving was waived when not raised in the trial court).[6]

Accordingly, to the extent Garcia's second issue is based on her argument that the trial court ignored her evidentiary objections, we overrule her second issue.

## C.  Whether the TCPA was applicable to Garcia's claims (Part of Issue 2).

Garcia's next argument concerns whether Semler demonstrated the applicability of the TCPA to Garcia's malicious-prosecution and defamation claims.

---

[6] Garcia objected to an unspecified statement in one paragraph in the verified factual background section of Semler's TCPA motion on grounds that it was an inadmissible legal conclusion by a lay witness. We assume without deciding that this type of objection could be raised on appeal without obtaining a ruling in the trial court. *See Mata v. Harris Cty.*, No. 14-14-00363-CV, 2016 WL 675379, at *4 (Tex. App.—Houston [14th Dist.] Feb. 18, 2016, no pet.) (mem. op.) (in plea-to-jurisdiction context, objection that an affidavit states a legal conclusion may be raised for the first time on appeal). However, Garcia does not identify the precise statement within this paragraph that she contends constitutes a legal conclusion, and she cites no authority and provides no argument supporting her complaint. *See* TEX. R. APP. P. 38.1(i). Garcia also fails to explain how the trial court's failure to sustain any of her objections was harmful. *See* TEX. R. APP. P. 44.1(a).

Before addressing her argument, we provide a brief overview of the TCPA's three-step framework.

### 1. Three-step analysis required by the TCPA and standard of review

The TCPA protects citizens who petition or speak out on matters of public concern from retaliatory lawsuits intended to silence them. *Barnes v. Kinser*, 600 S.W.3d 506, 509 (Tex. App.—Dallas 2020, pet. denied). That protection comes in the form of a motion to dismiss for a suit that appears to stifle the defendant's exercise of those rights. *Id.* A TCPA motion to dismiss generally requires a three-step analysis.

First, the TCPA movant bears the initial burden of demonstrating that the legal action is based on or in response to the movant's exercise of a protected right, such as the right of free speech or the right to petition, or certain other protected conduct. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). Second, if the movant carries her burden, then the burden shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. *Id.* § 27.005(c). Third, even if the nonmovant carries her step-two burden, the court shall nevertheless dismiss the legal action if the movant establishes as a matter of law her entitlement to judgment on an affirmative defense or other ground. *Id.* § 27.005(d).

We review de novo the trial court's determinations that the parties met or failed to meet their respective burdens under the TCPA. *Vaughn-Riley v. Patterson*,

No. 05-20-00236-CV, 2020 WL 7053651, at *2 (Tex. App.—Dallas Dec. 2, 2020, no pet.) (mem. op.).

### 2. The right to petition and Semler's step-one burden

#### a. Malicious Prosecution

Garcia argues that her malicious-prosecution claim did not implicate Semler's right to petition. We note that in Semler's TCPA motion, she argued that Garcia's malicious-prosecution claim satisfied step one of the TCPA analysis because the claim sought "to punish Semler for nothing more than filing charges with a criminal authority." Semler contended that her conduct amounted to an exercise of the right to petition because the TCPA defines that right to include communications in or pertaining to a judicial proceeding. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4)(A)(i). On appeal, Garcia makes only one substantive argument about why her malicious-prosecution claim was not based on or in response to Semler's exercise of the right to petition: The TCPA is not intended to preclude meritorious lawsuits for malicious prosecution, and if Semler's assertion about the right to petition and Garcia's malicious-prosecution claim were true, then it "would defeat any malicious prosecution claim regardless of the merits of the claim." We disagree.

Garcia's argument ignores the three-step analysis required by the TCPA. A court's concluding that Semler carried her initial TCPA burden as to Garcia's malicious-prosecution claim does not automatically require dismissal of the claim "regardless of the merits," as Garcia contends. It merely shifts the burden to Garcia

–13–

to produce prima facie evidence of each element of the claim. *See id.* § 27.005(b), (c). Accordingly, we reject Garcia's only argument as to why Semler did not successfully carry her step-one burden on Garcia's malicious-prosecution claim.

### b. Defamation

Garcia also argues that there was no basis for Semler's position that her right to petition was applicable to Garcia's defamation claim. She contends that the statements at issue were on Facebook and did not give rise to the criminal proceeding or constitute testimony in the criminal proceeding. Thus, Garcia argues, the statements challenged as defamatory were not "communications in or pertaining to" "a judicial proceeding" constituting the exercise of the right to petition as defined by the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4).

However, we conclude below that Semler met her step-one burden by demonstrating that Garcia's defamation claim was based on or in response to her exercise of the right of free speech. Thus, it is not necessary for the disposition of this appeal for us to determine whether Semler invoked the right to petition when seeking dismissal of Garcia's defamation claim or, if so, whether she met her step-one burden in that regard. *See* TEX. R. APP. P 47.1.

### 3. The right of free speech and Semler's step-one burden

Garcia asserts Semler did not meet her step-one burden with respect to Garcia's defamation claim and the exercise of the right of free speech.[7] Garcia argues that Semler's attack on Garcia's defamation claim failed because Semler's motion did not establish that Semler's statements about Garcia involved a matter of public concern. In her TCPA motion, Semler did not explain exactly how her Facebook posts, on which Garcia's defamation claim was based, involved a matter of public concern. But she did assert that her statements concerned the theft of Semler's signs.

The TCPA defines the exercise of the right of free speech as "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). The TCPA further defines "matter of public concern" to include both "a matter of political, social, or other interest to the community" and "a subject of concern to the public." *Id*. § 27.001(7)(B), (C). It is well-settled that even after the 2019 amendments, "criminal acts are matters of public concern." *Austin v. Amundson*, No. 05-22-00066-CV, 2022 WL 16945911, at

---

[7] In a footnote, Garcia argues that "false defamatory statements are, by definition, not legally protected free speech since they are actionable under Texas law." For purposes of a movant's step-one burden, however, the issue about whether a communication implicates the exercise of the right to free speech does not require us to determine the statement's veracity. *Cruz v. Van Sickle*, 452 S.W.3d 503, 515 (Tex. App.—Dallas 2014, pet. denied); *see also Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *5 (Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op.) (stating that "BCG contends that Kinney's statements do not relate to free speech because they were false and defamatory and thus not constitutionally protected," but whether statements were defamatory "is reviewable in the second part" of the TCPA analysis).

–15–

*3 (Tex. App.—Dallas Nov. 15, 2022, no pet. h.) (mem. op.). Theft is a criminal act. *See* TEX. PENAL CODE ANN. § 31.03. According to Garcia's own petition and evidence, at least some of Semler's Facebook posts expressly reference criminal activity. For example, one post said, "Don't mess with my estate sale signs! You are a thief!" And another said, "Oh Lordy! I hope there are fingerprints. Stolen signs found on the doorstep this morning. Hope you fry, NG! You were seen taking them. Theft is theft!" Thus, Semler's statements made on Facebook about alleged criminal activity involved a matter of public concern. *See, e.g.*, *Austin*, 2022 WL 16945911, at *3; *Beard v. McGregor Bancshares, Inc.*, No. 05-21-00478-CV, 2022 WL 1076176, at *6 (Tex. App.—Dallas Apr. 11, 2022, pet. denied) (mem. op.).

Garcia does not argue that any particular Facebook post did not address criminal activity. Because we may not reverse on grounds not raised by Garcia, we do not attempt to parse them out either. *See State Bar of Tex. v. Evans*, 774 S.W.2d 656, 658 n.5 (Tex. 1989) (per curiam) (appellate court cannot reverse based on arguments not raised by appellant).

Accordingly, we overrule the remainder of Garcia's second issue.

**D. Whether Garcia offered sufficient evidence of her defamation claim under the TCPA (Issue 3).**

Garcia argues that she established by clear and specific evidence the prima facie elements of her defamation claim and met her step-two burden. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). We keep in mind that the phrase "clear and specific evidence" means evidence that is unambiguous, free from doubt, and

–16–

explicit or referring to a particular named thing. *See Marble Ridge Capital LP v. Neiman Marcus Grp., Inc.*, 611 S.W.3d 113, 122 (Tex. App.—Dallas 2020, pet dism'd). The term "clear and specific" pertains to the quality of evidence required to establish a prima facie case, and the term "prima facie case" pertains to the amount of evidence necessary for a plaintiff to carry her minimal factual burden to support a rational inference establishing each essential element of a claim. *Id.*

### 1.    Applicable law

The elements of a defamation claim include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (orig. proceeding). The status of the person allegedly defamed determines the requisite degree of fault. *Id.* A private individual need prove only negligence, while a public figure or official must prove actual malice. *Id.* Nothing in the record indicates that Garcia is a public figure or official, so the negligence standard applies here.

Only statements that are verifiable as false can support a defamation claim. *See Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 639 (Tex. 2018). Statements that cannot be verified or that cannot be understood to convey a verifiable fact are mere opinions and will not satisfy the first element of defamation. *See id.*

## 2.    The evidence

Garcia and Semler each filed a declaration and other evidence regarding the material facts of the case.

According to Semler's declaration, Semler placed "numerous estate sale signs" throughout the neighborhood of the house where the sale would occur. On August 16, Semler received a text message from Garcia stating, "[Y]our [Signs are] placed on public property against city ordinance – please remove[.]" On August 17, Semler placed signs throughout the neighborhood advertising an open house for the home. On August 17, three of the signs were left on the doorstep of the house where the estate sale was taking place accompanied by a note alleging that the signs were not allowed on public or private property. A person named Tom O'Brien informed Semler that Garcia was responsible for removing one of the signs. Semler contacted the authorities to report her belief that Garcia had stolen and/or removed some or all of her signs, and a criminal case was brought against Garcia in Addison municipal court.

Garcia filed an affidavit that Semler submitted to the Addison police department wherein Semler stated that she conducted an estate sale at the house on August 16–17. Semler stated that she set out approximately nine estate-sale signs the morning of August 16. After the traffic at the sale thinned out considerably, she went out to check the signs, found that several were gone, and replaced them. She then stated that sometime after lunch, a customer told her that she saw a woman

driving a red car picking up the signs. She stated that, at this point, she went out again and replaced the signs and then called the police.

According to Garcia's declaration, on August 16, 2019, Semler posted as many as nine estate-sale signs around Addison advertising an estate sale that Semler was conducting on August 16 and 17. Garcia sent Semler a text message telling her that an Addison ordinance prohibited the posting of such estate-sale signs other than on the property where the estate sale was occurring.

According to Garcia's declaration, Semler made six Facebook posts that were defamatory about Garcia:

1. "Don't mess with my estate sale signs! You are a thief!" (August 16, 2019.)

2. "N.G…Pure evil." (August 16, 2019.)

3. "When you die NG, I hope someone does to you what you have done to TM's neighbor to sabotage your estate sale. You are one miserable, wretched little person." (August 17, 2019.)

4. "Oh Lordy! I hope there are fingerprints. Stolen signs found on the doorstep this morning. Hope you fry, NG! You were seen taking them. Theft is theft!" (August 17, 2019.)

5. "Lookie, lookie! New open house sign to replace some STOLEN on Saturday[.] Lordy, there's a witness." (August 20, 2019.)

6. "Just because you're found 'not guilty' doesn't mean you didn't do it. Hope you learned your lesson!" (February 21, 2020.)

Garcia's declaration also said that she was prosecuted for "theft from an individual of property with a value under $100," a Class C misdemeanor. On February 21, 2020, Garcia was acquitted after a trial.

–19–

### 3. Application of law to the evidence

With respect to evidence that Semler published a false statement of fact to a third party that was defamatory concerning Garcia, Garcia generally argues that she was subject to libel per se by three Facebook postings, though she does not specify which ones, that accused her of theft. She also argues that the last sentence in Facebook post 3 was defamatory because it impeached her honesty, integrity, virtue, or reputation and exposed her to public hatred, contempt or ridicule, or financial injury.

We conclude that the statement describing Garcia as "pure evil" (Facebook post 2) and as a "miserable, wretched little person" (the last sentence of Facebook post 3) are no evidence of defamation because they are statements of opinion that cannot be verified as fact. *See Dallas Morning News*, 554 S.W.3d at 639.

We further conclude that the post stating "[j]ust because you're found 'not guilty' doesn't mean you didn't do it" (the first sentence of Facebook post 6) is no evidence of defamation because it is not false; a person who is acquitted of a crime can nevertheless be guilty of that crime in fact. Semler's post about "[h]oping you learned your lesson" (second sentence of Facebook post 6) is no evidence of defamation because it contains no statement of fact about Garcia.

As for the remaining statements that Garcia stole signs and was a thief and sabotaged an estate sale (Facebook post 1, the first sentence in Facebook post 3, and Facebook posts 4 and 5), we assume without deciding that, in context, they amount

to evidence of defamation's first two elements. Nevertheless, we conclude that Garcia's defamation claim fails because Garcia did not produce clear and specific evidence that Semler acted with negligence in making those statements.

Garcia's only appellate argument that Semler acted with negligence is that Semler misstated the contents of an affidavit of an alleged witness to Garcia's theft. However, Garcia does not specify what witness affidavit she is referring to that Semler supposedly misstated, nor does she explain where or how Semler misstated the affidavit with respect to any of the Facebook statements. The only affidavit in the record other than Semler's is the affidavit of Tom O'Brien to the Addison police. He said that on August 17, 2019, he saw Garcia get out of her car and "head[] towards the open house sign." He also said that Garcia drives a red Mercedes.

In her Facebook statements, Semler said, "You were seen taking them," and, "Lordy, there's a witness." Even assuming these statements were false, we see no evidence showing that Semler acted unreasonably in believing and making these statements. In her declaration, Semler said, "[A]n individual named Tom O'Brien informed me that Garcia was responsible for the removal of one of the signs." In her affidavit to the police, Semler said that during the estate sale, sometime after lunch, "a customer told me [Semler] she saw a woman driving a red car picking up the signs." In that same affidavit, Semler also said that Tom O'Brien told Semler that "he saw Ms. Garcia take a sign."

In her declaration, Garcia admitted that she had texted Semler that her estate-sale signs other than the one at the house for the estate sale were in violation of an Addison sign ordinance. And Semler stated in her declaration that she had determined that the number texting her belonged to Garcia; that Garcia had texted her about the signs being placed on public property against a city ordinance; and that the following day, three signs had been left on the doorstep of the home with a note alleging that the signs were not allowed on public or private property. A Facebook post in Garcia's own evidence depicts a handwritten note on an estate sale sign stating, "Neighborly reminder [t]hese signs are not allowed," indicating that the signs had been placed there by a "neighbor" and not legal authorities.

Thus, there is evidence showing that Semler had a reasonable basis for saying that there was a witness to Garcia's theft. More importantly, we see no evidence proving that she lacked a reasonable basis for that statement—that is, that she acted negligently. Although O'Brien's written statement to the Addison police (dated August 22, 2019), said only that he saw Garcia approach an open-house sign and not that he saw her take a sign, that fact does not prove that O'Brien said the same thing to Semler earlier when she posted the comments between August 16th and 20th—nor does it prove that Semler was ever made aware of what O'Brien had put in his affidavit to the police. Moreover, Semler also reported that on August 16, another witness, an unidentified estate-sale customer, also told her that she saw a woman in a red car picking up the signs, and O'Brien stated to the police that Garcia drove a

–22–

red car. Thus, Semler could have been referring to the estate-sale customer rather than O'Brien when she said there was a witness.

Garcia had the burden to produce clear and specific evidence that Semler acted negligently in making a false, defamatory statement about Garcia. Garcia's only appellate argument that there is clear and specific evidence of Semler's negligence is based on an alleged discrepancy between O'Brien's affidavit to the police (not his statement to Semler) and Semler's assertions on Facebook. We conclude that this discrepancy, if any, standing alone, is not clear and specific evidence that Semler was negligent. Accordingly, we conclude that Garcia did not demonstrate that she met her step-two burden with respect to her defamation claim. Thus, the trial court did not err by dismissing this claim.

We overrule Garcia's third issue.

## E. Whether Garcia offered sufficient evidence of her malicious-prosecution claim under the TCPA (Issue 4).

Garcia argues that she offered clear and specific evidence of the elements of her malicious-prosecution claim.

The elements of a claim for malicious prosecution are as follows: (1) a criminal prosecution was commenced against the plaintiff; (2) the defendant initiated or procured that prosecution; (3) the prosecution terminated in the plaintiff's favor; (4) the plaintiff was innocent of the charges; (5) the defendant lacked probable cause to initiate the prosecution; (6) the defendant acted with malice; and (7) the plaintiff suffered damages. *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 792 n.3

(Tex. 2006). The probable-cause element asks whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were instituted. *Id*. at 792–93. Courts must presume that the defendant acted reasonably and had probable cause to initiate criminal proceedings. *Id*. at 793. To rebut this presumption, the plaintiff must produce evidence that the motives, grounds, beliefs, or other information upon which the defendant acted did not constitute probable cause. *Id*.

We focus our analysis on the element of lack of probable cause because it is dispositive. Garcia had the burden to show this element with clear and specific evidence. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). In her appellate brief, Garcia presents one theory in support of this argument: Semler unjustifiably relied on an alleged witness to Garcia's conduct when that witness did not "pin any such illegal conduct on Garcia" either in a statement to Semler or in an affidavit to the Addison police. To support this argument, she cites O'Brien's affidavit to the police. But, as discussed above, there is evidence in the record showing that O'Brien told Semler that he had seen Garcia take a sign, and there is no evidence that O'Brien did not make such a statement to Semler. That is, O'Brien's statement to the police on August 22 that he had seen Garcia approach an open-house sign is no evidence that Semler lacked probable cause to initiate a prosecution when she called the police days earlier. There is also evidence that another witness told Semler on August 16

that she had seen a woman driving a red car picking up the signs, and O'Brien stated in his affidavit to the police that Garcia drove a red Mercedes.

We conclude that Garcia has not shown that there was clear and specific evidence that Semler lacked probable cause to make her report about Garcia to the police. Accordingly, we conclude that Garcia did not demonstrate that she met her step-two burden with respect to her malicious-prosecution claim. Thus, the trial court did not err by dismissing this claim.

We overrule Garcia's fourth issue.

## F. Whether Semler's evidence established any defenses or inferential rebuttals to Garcia's malicious-prosecution claim (Issue 5).

Garcia argues that Semler raised multiple arguments in the nature of affirmative defenses or inferential rebuttals to Garcia's malicious-prosecution claim but none were valid. Because we conclude above that Garcia did not meet her step-two burden with respect to her malicious-prosecution claim, we do not need to discuss Garcia's arguments relating to Semler's step-three burden under the TCPA. *See* Tex. R. App. P. 47.1.

## G. Whether the trial court should have denied attorney's fees to Semler and instead awarded them to Garcia (Issue 6).

Finally, Garcia argues that we should reverse the award of attorney's fees against her because we should reverse the granting of Semler's TCPA motion to dismiss.

Because we conclude above that Garcia is not entitled to reversal of the judgment dismissing her claims, we reject her contention that the trial court erred by awarding Semler her attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a) (upon dismissing a legal action, the trial court "shall award to the moving party court costs and reasonable attorney's fees incurred in defending against the legal action").

Garcia also argues that the trial court erred by not awarding Garcia her attorney's fees under § 27.009(b). That section authorizes an award of fees against a TCPA movant only if the TCPA motion is frivolous or solely intended to delay. *See id*. § 27.009(b). Garcia has not shown that Semler's motion was frivolous or solely intended to delay. Accordingly, we conclude that Garcia has not shown an abuse of discretion with respect to the awarding of attorney's fees. *See Jones v. Frisco Fertility Ctr., PLLC*, No. 05-21-00008-CV, 2022 WL 17248837, at *8–9 (Tex. App.—Dallas Nov. 28, 2022, no pet. h.) (mem. op.) (applying abuse-of-discretion standard of review to trial court's § 27.009(b) ruling).

We overrule Garcia's sixth issue.

## CONCLUSION

We affirm the trial court's judgment.

/Barbara E. Rosenberg/
BARBARA ROSENBERG
JUSTICE, ASSIGNED

210750f.p05

–26–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

NELLY SUAREZ GARCIA,
Appellant

No. 05-21-00750-CV          V.

LORRIE SEMLER, Appellee

On Appeal from the 14th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-04494.
Opinion delivered by Justice
Rosenberg. Justices Myers and
Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee LORRIE SEMLER recover the full amount of the trial court's judgment and the costs of this appeal from appellant NELLY SUAREZ GARCIA and from any supersedeas bond or cash deposit in lieu of supersedeas bond. After the judgment and all costs have been paid, we DIRECT the clerk of the trial court to release the balance, if any, of any cash deposit in lieu of supersedeas bond to the person who made the deposit.

Judgment entered this 30th day of December 2022.