Opinion issued August 17, 2023



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

## NO. 01-19-00182-CV

————————————

**JOHN E. DELOACH, INDIVIDUALLY, JOHN E. DELOACH AS GENERAL PARTNER OF JOHN E. DELOACH FAMILY LIMITED PARTNERSHIP, AND JOHN E. DELOACH FAMILY LIMITED PARTNERSHIP, Appellants**

**V.**

**STEPHEN STELLY, Appellee**

---

**On Appeal from the 253rd District Court**
**Chambers County, Texas**
**Trial Court Case No. CV29534**

---

## MEMORANDUM OPINION ON REMAND

Stephen Stelly sued John E. DeLoach, individually and as general partner of

the John E. DeLoach Family Limited Partnership ("the FLP"), and the FLP, for

breach of contract and trespass to try title. Stelly alleged that DeLoach improperly failed to transfer title to a 600-acre tract of land and some equipment for which he paid DeLoach in installments beginning in 2000. A jury found in favor of Stelly, and the trial court entered judgment on the verdict. The FLP filed a post-judgment motion for judgment n.o.v., arguing, among other things, that the claims were barred by the four-year statute of limitations for contract claims.

On original submission of the appeal, we reversed and rendered judgment for appellants on the single ground that the statute of limitations had run on Stelly's breach of contract claim, further concluding that Stelly had not pleaded a claim for trespass to try title. *DeLoach v. Stelly*, 644 S.W.3d 195, 201 (Tex. App.—Houston [1st Dist.] 2020), *rev'd*, 644 S.W.3d 657, 658 (Tex. 2022).

The Texas Supreme Court reversed, holding that under *Brumley v. McDuff*, 616 S.W.3d 926, 932 (Tex. 2021), "Stelly adequately pleaded a trespass-to-try-title claim and acquired equitable title upon completing payment to DeLoach for the original loan amount." *Stelly v. DeLoach*, 644 S.W.3d 657, 659 (Tex. 2022). The Supreme Court remanded the case to us for further proceedings. *Id.* at 660.

On remand, we consider appellants' remaining issues, and we affirm the judgment of the trial court.

## Background

The underlying facts and procedural history are well-known to the parties and have been set out in our prior opinion as well as the Texas Supreme Court's opinion. We therefore limit our discussion of the facts to those relevant to the remaining issues.

Stelly is a lifelong farmer. In 1998, he was farming land leased from Delta Rice Producers ("DRP"). DeLoach was a long-time family friend, having known Stelly's parents for years. DeLoach owned land, which he sometimes farmed, but his income derived from his ownership and operation of a wastewater injection well. In late 1999, DeLoach agreed to finance land and equipment that Stelly would use to farm sugar cane, as part of Stelly's plan to create a sugar cane growers' co-op and eventually build a sugar mill.

In mid-2000, DeLoach, on behalf of the FLP, entered into an earnest money contract with DRP to buy the 600 acres at issue here, which included the land that Stelly had been leasing. The earnest money contract provided a legal description and stated a purchase price of $330,000. Stelly testified at trial that he and DeLoach had agreed to purchase the property together, but DeLoach crossed through Stelly's name on the earnest money contract, purportedly to allow DeLoach to obtain his preferred financing. Stelly also testified that he provided the $50,000 earnest money through a loan from his bank. The loan agreement between

3

Texas Cane Services, the name in which Stelly did business, and his bank was admitted into evidence, along with the assumed name record showing Stelly's ownership of Texas Cane Services. The loan was dated September 28, 2000, which was several days before closing on the purchase of the 600 acres, which occurred on October 13, 2000.

Stelly testified that when DeLoach crossed through his name on the earnest money contract, he drafted a handwritten contract to protect what he believed would be his interest in the land. At trial, Stelly said: "I didn't want to just give him all of this money and buy the property from him and not have something in writing showing that I was buying the property from him." Both Stelly and DeLoach signed the contract at the same time DeLoach signed the earnest money contract. The handwritten contract stated:

> Mutual Agreement of Partnership Between Stephen B Stelly and John E DeLoach and John E DeLoach FLP
>
> Terms of agreement to Partners
>
> Stephen agrees to manage, support, find help for the land operations of the FLP's Property. Farm the land for the FLP to the best of his ability with no charge for the equipment owned by Stephen.
>
> John agrees 1st to finance FM 1663 600 acres for Stephen. 2nd all harvesting equipment needed by Stephen. 3rd agrees to pay Stephen $3500 monthly for his managing of the FLP's property and any additional labor and supplies needed.

Stephen agrees to pay John the total notes, taxes any [sic] fees for the 600 acres on FM1663, along with all notes on equipment financed by John. Upon final payment of property, John will deed property over to Stephen. Same with all equipment purchased.

The FLP purchased the property for $330,000, with a mortgage from Capital Farm Credit. Around the same time, the FLP also purchased equipment for harvesting and transporting sugar cane. Stelly conceded at trial that the 600 acres were owned wholly in FLP's name, but he said that he paid off the land and equipment in accordance with their agreement.

According to Stelly's trial testimony, he made payments in several ways. He obtained a loan of $50,000 just before closing on the land purchase. He made some payments to DeLoach or the FLP by check from his Texas Cane Services account or by personal check. Stelly also directed income owed to him from harvesting sugar cane to be paid to DeLoach or the FLP.

Stelly's ledger reflecting his business accounts and payments made to DeLoach or the FLP was admitted at trial along with his backup documentation that provided support for the ledger entries. The backup documentation admitted at trial included the loan document for the $50,000 earnest money loan; checks signed by Stelly and by his accountant, William Haynie, who did not testify at trial; checks that referenced that the payment was for the 600 acres, the "land," property tax, or equipment; a property tax receipt; and information regarding the cane harvesting and hauling business. Stelly testified that he did not have backup

documentation to support every item in his ledger because some documents were lost in a house fire.

At trial, Stelly said that he had owed a total of $514,050 for the land and equipment, and when he looked at the numbers after he filed the lawsuit, he realized that he had paid a total of $773,640, indicating that he overpaid by $259,140.82. When asked at trial how he happened to overpay what he owed, Stelly said: "When you're farming, it don't take much to spend $200,000," and he conceded that he had not added up all the payments until after he filed suit.

At trial, Stelly said that he was aware that there was still a balance of about $130,000 on the mortgage despite his having paid DeLoach and the FLP in full. Stelly testified: "Mr. DeLoach didn't pay the note. He'd take the money. I don't know what he did with the money. I gave it to him." Stelly also testified that he paid taxes on the land.[1] Stelly testified that he owned the property. When asked

---

[1]  Stelly produced one check for payment of property taxes in 2014. Stelly testified about the payment of taxes on direct examination. He was asked, "[H]ave you paid all of your taxes on your property taxes [*sic*]?" Stelly replied: I pay my taxes pretty much every year, yes, sir.

The appellants' counsel questioned Stelly about property taxes:
Q.    [W]hen we go back to the—to the Mutual Agreement of Partnership [the handwritten agreement], it says that you will also pay all of the taxes as they come due. Is that correct?
A.    That's correct.
Q.    And you've got one payment of $1,691 since 2000?
A.    That's correct.
Q.    Okay. Is that all of the taxes?
A.    No, sir. Every year there's taxes.

when he acquired title to the property, Stelly said: "Well, I assumed I owned it after the money got paid. There never was any other assumption." In 2005, DeLoach, on behalf of the FLP, and Stelly, both signed as grantors on a deed transferring 2.32 acres of the 600 acres to Stelly's parents to use as a homestead.

In 2015, years after DeLoach first fell on financial hard times—Stelly testified that DeLoach was "broke"—DeLoach asserted to Stelly that he was the sole owner of the 600 acres and that he intended to sell the property. Soon thereafter, Stelly filed this lawsuit.[2]

The case was tried to a jury. Relevant to the issues remaining on appeal, the jury determined that:

1.  DeLoach, as general partner of the FLP, and Stelly agreed that DeLoach, as general partner of the FLP, would transfer the deed to the 600 acres to Stelly upon Stelly complying with the terms of the agreement.

2.  Stelly did not fail to comply with the agreement.[3]

---

Q.   And so you haven't paid the rest of them.
A.   Was that a question.
Counsel for appellant:   Strike that, Your Honor.

[2]   John E. DeLoach died while this case was pending in the trial court.

[3]   This question included the following instruction:

A failure to comply must be material. The circumstances to consider in determining whether a failure to comply is material include:
1. The extent to which the injured party will be deprived of the benefit which he reasonably expected;
2. The extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

7

3.   DeLoach, as general partner of the FLP, failed to comply with the agreement by refusing to deed the property to Stelly.

The trial court entered judgment on the verdict, which provided:

. . . .

IT IS THEREFORE ORDERED, ADJUDGED, AND DECLARED that (1) plaintiff Stephen Stelly is the owner of the real property just as if defendants (and their heirs and assigns) had conveyed the property to plaintiff Stephen Stelly by warranty deed; and (2) defendants (and their heirs and assigns) hereby have no interest in the real property and plaintiff's ownership interest is free and clear of any and all interests defendant (and their heirs and assigns) had in the real property.[4]

The trial court denied the appellants motion for j.n.ov., and the appellants appeal.

## Analysis

The appellants raised 12 issues on appeal. On original submission, we reversed the judgment based on the statute of limitations for contract claims. *DeLoach*, 644 S.W.3d at 201–02, *rev'd*, 644 S.W.3d at 659–60. We also concluded that, as to the claim for title to the 600 acres, Stelly had not pleaded a claim for trespass to try title. *Id.* The Supreme Court of Texas reversed, holding that the

---

3.  The extent to which the party failing to perform or to offer to perform will suffer forfeiture;

4.  The likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account the circumstances including any reasonable assurances;

5.  The extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

[4]   The trial court did not enter judgment requiring specific performance.

8

statute of limitations did not apply to a claim for trespass to try title based on a claim of equitable title and that Stelly had pleaded a claim for trespass to try title based on a claim of equitable title. *Stelly*, 644 S.W.3d at 659–60.

Because trespass to try title does not apply to personal property, our prior holding that Stelly's claim for recovery of the equipment is barred by limitations remains in effect. *See* TEX. PROP. CODE § 22.001(a) ("A trespass to try title action is the method of determining title to lands, tenements, or other real property."); *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716–17 (Tex. 2003) (explaining "law of the case" doctrine). Considering the Supreme Court's holding in *Stelly*, in this opinion, we do not need to address the following issues: issue 1 (statute of limitations for breach of contract); issue 2 (breach of contract remedy of specific performance); and issues 9–11 (challenges to the agreement to purchase equipment). *See* TEX. R. APP. P. 47.1. In addition, issue 4 asserts that there was no evidence to support a theory of partnership liability. The trial court's judgment in favor of Stelly was not based on a partnership liability theory. We therefore do not need to analyze appellants' arguments regarding partnership liability. *See id.*

On remand, we consider issues 3 and 5–8, which relate to Stelly's claim of equitable title. The appellants challenge the admission of the agreement regarding the 600 acres into evidence at trial, and they assert that the evidence is legally

insufficient to support the jury's findings regarding breach of the contract. Finally, we also consider issue 12, which argues the statute of frauds.

## I.    Trespass to try title and equitable title

"A trespass to try title action is the method of determining title to lands, tenements, or other real property." TEX. PROP. CODE § 22.001(a); *see Brumley*, 616 S.W.3d at 831–33; *Lance v. Robinson*, 543 S.W.3d 723, 736 (Tex. 2018). "The trespass-to-try-title statute 'is typically used to clear problems in chains of title or to recover possession of land unlawfully withheld from a rightful owner,' and the plaintiff in such an action must 'establish superior title' to the property." *Lance*, 543 S.W.3d at 736 (quoting *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004)). A trespass-to-try-title action is "the exclusive remedy for resolving overarching claims to legal title." *Brumley*, 616 S.W.3d at 832. In a trespass-to-try-title action, a plaintiff may prove legal title by establishing: (1) a regular chain of title of conveyances from the sovereign to the plaintiff; (2) a superior title to that of the defendant out of a common source; (3) title by limitations (i.e., adverse possession); or (4) possession that has not been abandoned. *Id.* "[A] plaintiff in a trespass to try title suit may recover on the strength of an equitable title as well as a legal one." *Neeley v. Intercity Mgmt. Corp.*, 623 S.W.2d 942, 951 (Tex. App.—Houston [1st Dist.] 1981, no writ) (citing *Johnson v. Wood*, 157 S.W.2d 146, 148

(Tex. 1941)); *accord Cullins v. Foster*, 171 S.W.3d 521, 533 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

"'Equitable title' is a right, enforceable in equity, to have the legal title to real estate transferred to the owner of the right upon the performance of specified conditions." *City of Hous. v. Guthrie*, 332 S.W.3d 578, 588 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *accord Neeley*, 623 S.W.2d at 950–51 (defining "equitable title" as enforceable right to have legal title transferred to holder of equity). Equitable title vests in a purchaser upon payment of the purchase price for full performance of the obligations under the contract. *Johnson*, 157 S.W.2d at 148; *Haynes v. Molina*, No. 01-19-00917-CV, 2021 WL 4155822, at *7 (Tex. App.—Houston [1st Dist.] Sept. 14, 2021, pet. denied) (mem. op.) (stating that purchaser under contract for deed obtains immediate right to possess property and acquires equitable title upon payment of full purchase price); *Ferrara v. Nutt*, 555 S.W.3d 227, 240 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (same).

## II.    Admission of the agreement between Stelly and DeLoach

In their fifth issue, the appellants argue that the trial court erred by admitting exhibits P4 and P4A. Exhibit P4 is a copy of the original handwritten agreement between Stelly and DeLoach regarding the 600 acres and the equipment. Exhibit P4A is a typewritten comparator, admitted due to the limited legibility of the handwritten copy. The appellants argue that the trial court abused its discretion by

11

admitting these documents because the best evidence rule required that Stelly provide the original copy of the agreement. They maintain that because the agreement was executed by Stelly and DeLoach without witnesses, and because DeLoach was deceased by the time of trial, there were questions about the authenticity of Exhibit P4, and it was unfair to admit it with only Stelly's biased testimony.

"A reviewing court may not substitute its judgment for that of the trial court regarding 'the resolution of fact issues or matters committed to the trial court's discretion.'" *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 698 (Tex. 2015) (citing *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992)). The admission of evidence is principally within the discretion of the trial court. *Mem'l Hermann Hosp. Sys.*, 464 S.W.3d at 698 (citing *Flores v. Fourth Ct. of Appeals*, 777 S.W.2d 38, 41 (Tex. 1989)).

The Texas Rules of Evidence provide for the general admissibility of all evidence having any tendency to make a fact of consequence more or less probable. TEX. R. EVID. 401, 402; *Diamond Offshore Servs. Ltd. v. Williams*, 542 S.W.3d 539, 544 (Tex. 2018); *Martinez v. Kwas*, 606 S.W.3d 446, 453 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). We review a trial court's admission of evidence for an abuse of discretion. *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 142 (Tex. 2016); *see Williams*, 542 S.W.3d at 545 ("The trial court has extensive

discretion in evidentiary rulings, and we will uphold decisions within the zone of reasonable disagreement."). A trial court abuses its discretion when it acts without regard for any guiding rules. *Caffe Ribs*, 487 S.W.3d at 142.

Ordinarily, "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules [Texas Rules of Evidence] or other law provides otherwise." TEX. R. EVID. 1002. "A duplicate is admissible to the same extent as the original unless a question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." *Id.* 1003.

At trial, the appellants objected to the authenticity of both P4 and P4A and argued that they were entitled to the see the original. Stelly testified that he hand-wrote the agreement, P4, and typed it, P4A, to assist his lawyers. He testified that both he and DeLoach signed the document. He said that he recognized DeLoach's signature, and he identified it on the handwritten agreement, P4. Stelly testified that they immediately photocopied the document after signing it, and that DeLoach took the original, leaving him with a copy. He also stated that the photocopy, P4, accurately reflected the original document, as did the typewritten comparator, P4A.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). Such evidence

may be supplied by the testimony of a witness with knowledge "that an item is what it is claimed to be." *Id.* 901(b)(1); *see Northpointe LTC, Ltd. v. Durant*, No. 01-22-00215-CV, 2022 WL 17835223, at *5 (Tex. App.—Houston [1st Dist.] Dec. 22, 2022, no pet.) (mem. op.) (stating that document considered authentic if sponsoring witness vouches for its authenticity).

Stelly vouched for the authenticity of the copy of the agreement regarding the 600 acres and the equipment. He provided detailed information demonstrating how and when the copy of the agreement came into existence, and he identified DeLoach's signature. Considering Stelly's testimony, we conclude that the trial court did not abuse its discretion by admitting both exhibits, P4 and P4A. *See Williams*, 542 S.W.3d at 545; *Caffe Ribs*, 487 S.W.3d at 142. We overrule the fifth issue.

## III. Legal sufficiency issues

In each of the remaining issues—issues 3, 6, 7, and 8—the appellants argue, at least in part, that the evidence is legally insufficient to support either a jury finding or an element necessary for the court to conclude that Stelly has equitable title to the 600 acres.

### A. Legal sufficiency standard of review

When an appellant challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which it did not have the burden of

proof, it must demonstrate that no evidence supports the finding. *Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014). "In reviewing a verdict for legal sufficiency, we credit evidence that supports the verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We will sustain a legal sufficiency challenge if the record shows that: (1) there is a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. "Evidence does not exceed a scintilla if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *Suberu*, 216 S.W.3d at 793 (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)).

**B.     The existence of a binding agreement between DeLoach and Stelly is supported by legally sufficient evidence. (Issue 6)**

In their sixth issue, the appellants argue that the evidence was legally insufficient to support a conclusion that DeLoach and Stelly had a valid contract. To prove the existence of a valid contract, a "plaintiff must establish that (1) an offer was made; (2) the other party accepted in strict compliance with the terms of the offer; (3) the parties had a meeting of the minds on the essential terms of the

15

contract (mutual assent); (4) each party consented to those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018); *see also In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (per curiam) (stating that mutuality of obligation is required for contract formation); *S.C. Maxwell Fam. P'ship, Ltd. v. Kent*, 472 S.W.3d 341, 345 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Under the ordinary principles governing the formation of contracts in Texas, consideration is a necessary requirement for the formation of a contract.").

### 1.    Consideration

First, the appellants argue that there was no evidence that the agreement was supported by consideration because Stelly relied in part on his own testimony without supporting bank records to prove the amount of money that he paid DeLoach. They rely on *Mooring v. McBride*, 62 Tex. 309, 1884 WL 8909 (1884), for the proposition that proof of payment cannot be made solely on the declaration of the purchaser. In *Mooring*, the only proof of title presented by the appellee was "declarations made by [the purported equitable title holder] while he was in possession of the land." 1884 WL 8909, at *2. Nothing in that opinion suggests that the subsequent purchaser relied on sworn testimony, as opposed to hearsay

statements.[5] *See id.* And a party's testimony that he paid installments on a purchase of property is not per se invalid. *E.g.*, *Cullins*,171 S.W.3d at 534 (holding that purchaser's testimony, in addition to other evidence, created fact question sufficient to defeat summary judgment in trespass-to-try-title suit).

Here, the evidence that Stelly paid the purchase price includes his own testimony, which was subject to a credibility determination by the jury. We cannot substitute our credibility determination for that of the jury. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (recognizing principle that jury is sole judge of witness credibility). The evidence also includes: (1) a loan agreement for $50,000 to Stelly's business, Texas Cane Services, which Stelly testified represented the earnest money; (2) a payment ledger showing payments to DeLoach and the FLP for land and property taxes; and (3) backup documentation, including canceled checks. Stelly's proof that he paid the purchase price and complied with the agreement was not limited to his own statements, and it was legally sufficient to support the judgment. *See Suberu*, 216 S.W.3d at 793.

Stelly also provided proof that he paid property taxes. He provided a check, a receipt, and his own testimony. Reasonable jurors could have believed that some of his receipts or canceled checks were lost in his house fire. Stelly answered the question of whether he had paid all the property taxes by saying: "I pay my taxes

---

[5]     The opinion suggests that the declarations may have been made as much as ten years before trial.

17

pretty much every year, yes, sir." When asked on cross-examination about the documentation for only one year's property tax, he said that was not all because "[e]very year there's taxes." A reasonable jury could have considered Stelly's testimony and concluded that his answers indicated that he paid the property taxes. While his answers were not, perhaps, a model of clarity, Stelly's testimony and the documentary evidence admitted at trial do not show a complete absence of evidence that he paid the property tax, nor does the evidence conclusively establish that he did not pay property tax. *See City of Keller*, 168 S.W.3d at 810. The evidence here is more than a scintilla, and the jury, in its role of determining credibility of the witnesses, could have reasonably believed that Stelly paid the property tax as required by the handwritten contract. *See City of Keller*, 168 S.W.3d at 810. We conclude that the evidence is legally sufficient to support a finding that the contract was supported by consideration. *Id.*; *see also Suberu*, 216 S.W.3d at 793.

### 2. Purchase price and legal description of the property

Second, the appellants argue that there was no evidence to establish a definite purchase price for the 600 acres or a specific legal description of the real property. To be sufficient to satisfy the Statute of Frauds for an agreement relating to real estate conveyances, "the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed

may be identified with reasonable certainty." *Davis v. Mueller*, 528 S.W.3d 97, 101 (Tex. 2017) (quoting *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex. 1972)). The Supreme Court has already said that the description of the 600 acres in the parties' agreement as "Farm #2504 on Hwy 1663 and Oak Island Rd" was sufficiently certain to allow the parties to identify it. *See Stelly*, 644 S.W.3d at 659. At trial, Stelly testified that the purchase price was $330,000. In addition, an earnest money contract for the property was admitted. Stelly testified that the earnest money contract was signed at the same time as the agreement between him and DeLoach. The earnest money contract and warranty deed include a legal description of the property. The earnest money contract and Stelly's testimony indicate that the purchase price was $330,000. This is some evidence of the legal description and the purchase price. *See, e.g.*, *DeWitt Cnty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999) ("Under generally accepted principles of contract interpretation, all writings that pertain to the same transaction will be considered together, even if they were executed at different times and do not expressly refer to one another."). We conclude that there was legally sufficient evidence of the property description and purchase price. *See Suberu*, 216 S.W.3d at 793.

In addition, in issue twelve, the appellants argue that the handwritten agreement violated the Statute of Frauds because the agreement does not

sufficiently describe the property to be conveyed or include a purchase price. Considering our conclusion that there was legally sufficient evidence of the property description and purchase price, we further hold that this is not a valid basis for a Statute of Frauds challenge.

### 3. Mutual assent

Third, the appellants argue that there was no evidence of mutual assent or of a meeting of the minds. "Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). The signed agreement was properly admitted into evidence at trial, and Stelly testified that DeLoach signed the document, retained the original, and gave him a duplicate that was made at the time it was signed. There was no evidence to the contrary. Two of DeLoach's stepdaughters testified that they were co-executors of his estate, and that they had looked through his papers after his death. Neither of them testified that the signature on the agreement was not DeLoach's. We therefore conclude that there is legally sufficient evidence that DeLoach signed the agreement and of mutual assent. *See Suberu*, 216 S.W.3d at 793.

In addition, in issue twelve, the appellants argue that the handwritten agreement violated the Statute of Frauds because there was no evidence that DeLoach signed the agreement. Because we conclude that legally sufficient

evidence supports a finding that DeLoach signed the agreement, we further hold that this is not a valid basis for a Statute of Frauds challenge.

**C.  The evidence is legally sufficient to support a conclusion that Stelly complied with the handwritten contract. (Issue 3) (Issue 7)**

In their third issue, the appellants argue that Stelly failed to obtain jury findings that show he has equitable title in the 600 acres. In the seventh issue, the appellants argue that there was no evidence that Stelly complied with the agreement regarding the 600 acres because a negative answer to the question whether a party "failed to comply with a contract" is not the same as a finding that a party complied with a contract.

In this case, the Texas Supreme Court has already held that the questions in the jury charge were sufficient to support a claim for equitable title:

> The jury found that an agreement existed between DeLoach and Stelly, that Stelly had not breached the agreement, and that DeLoach had failed to comply. Under our precedents, this jury determination is sufficient to find that Stelly was "vested with an equitable title to the property sufficient to enable him to maintain his action in trespass to try title." *Johnson v. Wood*, 138 Tex. 106, 157 S.W.2d 146, 148 (Tex. [Comm'n Op.] 1941).

*Stelly*, 644 S.W.3d at 660. While this statement is not a determination of the sufficiency of the evidence to support the jury verdict, it is a determination of the adequacy of the charge to support the cause of action.

In their seventh issue, the appellants rely on *Arbor Windsor Court, Ltd. v. Weekley Homes, LP*, 463 S.W.3d 131, 141–42 (Tex. App.—Houston [14th Dist.]

2015, pet. denied), for the proposition that the charge and the evidence do not support a jury finding that Stelly complied with the handwritten contract. Specifically, they argue that there is no evidence that Stelly paid the property taxes. We have already explained why the evidence is legally sufficient to support a jury verdict that Stelly complied with the requirement to pay taxes.

In *Arbor Windsor Court*, the court of appeals held that a negative answer to a jury question means that the party with the burden of proof failed to carry its burden. *Id.* at 141. In that case, Arbor Windsor Court sued Weekley Homes for breach of contract, and Weekley Homes countersued for breach of contract. *Id.* at 134. The jury found that Arbor Windsor Court failed to comply with a condition precedent, and on appeal Arbor did not dispute that finding. *Id.* at 135. The jury also found that Weekley Homes failed to comply with the contract, and Arbor Windsor Court did not fail to comply with the contract. *Id.* The trial court rendered take-nothing judgment in favor of Weekley Homes. *Id.* On appeal, Arbor Windsor Court argued that the jury's finding that it failed to comply with a condition precedent was immaterial because the jury also found that it did not fail to comply with the contract. *Id.* at 136. Thus, Arbor Windsor Court argued that the jury had found that it complied with the agreement and Weekley Homes did not, and Arbor Windsor Court sought judgment in its favor. *Id.*

The court of appeals held that the jury did not find that Arbor Windsor Court complied with the contract. *Id.* at 141. The court explained that Weekley Homes, the counter-plaintiff, had the burden of proof on the question of whether Arbor Windsor Court failed to comply with the agreement. *Id.* The court of appeals concluded that "the jury's negative answer means no more than Weekley failed to meet its burden to show that Arbor failed to comply with the contract." *Id.*

Here, the appellants did not have a counterclaim.[6] Stelly had the burden of proof on all affirmative issues on his trespass-to-try-title claim. The jury found that the agreement required Stelly to perform by paying the amounts owed before DeLoach, as general partner of the FLP, had an obligation to transfer the deed. The jury found that Stelly did not fail to comply, but DeLoach, as general partner of the FLP, did fail to comply. Construing these jury answers together, in this case, the jury's verdict is a finding that Stelly complied with the agreement because DeLoach's failure to comply could only have occurred after Stelly first complied. The appellants' reliance on *Arbor Windsor Court*, 463 S.W.3d at 141–42, is therefore misplaced.

---

[6] While they had an affirmative defense of limitations, no jury questions regarding that defense were submitted, and limitations is not part of the scope of this opinion on remand.

**D.     Legally sufficient evidence supports the jury's findings that DeLoach did not comply with the agreement. (Issue 8)**

In their eighth issue, the appellants argue that there is no evidence that they failed to comply with the handwritten agreement as to the 600 acres. Their argument reiterates their contentions about the lack of evidence that Stelly paid taxes and asserts that because Stelly did not comply with the handwritten agreement, they were not required to transfer the deed to the 600 acres to him. We have already addressed why those contentions are wrong. We note, additionally, that Stelly testified, multiple times, that he never received the deed. Considering our conclusion that that Stelly complied with the agreement and his undisputed testimony that the deed was never transferred, we hold that the evidence is legally sufficient to support the jury's determination that DeLoach, as general partner of the FLP, failed to comply with the agreement.

**Conclusion**

We overrule issues 3, 5–8 and 12, and we affirm the trial court's judgment.


                                             Peter Kelly
                                             Justice

Panel consists of Justices Kelly, Landau, and Farris.